THE WESTERN AND ATLANTIC RAILROAD COMPANY, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. Under the guarantees of the first and eleventh sections of the act of October 24th, 1870, authorizing the 'lease of the Western and Atlantic Railroad, the Western and Atlantic Railroad Company, though made a body corporate by said act, by virtue of the contract of lease when accepted by the governor and recorded, is not liable to a tax greater than one-half of one per cent. on the net income of the company.

2. By the eleventh section of said act, it is taxable to that extent.

State. Western and Atlantic Railroad. Contracts. Tax. Before Judge HOPKINS. Fulton Superior Court. October Term, 1874.

For the facts, see the opinions.

B. H. HILL & SON; JULIUS L. BROWN, for plaintiff in error.

N. J. HAMMOND, attorney general; R. TOOMBS, for the state.

TRIPPE, Judge.

By the act of October 24th, 1870, the state proposed to lease the Western and Atlantic Railroad for twenty years, for a sum not less than $25,000 00 per month, payable monthly. The lessees were to give bond in the sum of $8,000,000 00 for the performance of their contract, and for the return of the road and its appurtenances at the expiration of the lease, in as good condition as when received by them. The lessees were to become, by the act, a body corporate and politic, upon the acceptance of the proposition of lease, and when the terms were agreed upon between the governor and the leasing company, and their names entered on the minutes of the executive department. The act guaranteed that the company should "in no case be disturbed by the authority of the state so long as they keep the contract on their part, and make the payments when due." The 11th section of the act is as follows: "That said lessees shall never charge a higher rate of local freights on said road than the average rate charged by the Georgia Railroad and Banking Company, the Central Railroad and Banking Company, and the Macon and Western Railroad Company, for like local freights over said roads. And said company shall have the same exemptions, privileges, immunities, rights and guarantees, and shall be subjected to the same liabilities, disabilities and public burdens of said railroad companies last mentioned, and no more, in all cases

where this act is silent, and has made no provision on the subject: *Provided,* the act shall not be construed to confer banking privileges on said company."

The three roads mentioned in this section were, by their charters ,exempt from taxation beyond one-half of one per cent. on their net income. This exemption in two of those charters, those of the Central and Georgia Roads, were not, in October, 1870, subject to withdrawal. That in the charter of the Macon and Western was revocable, as it was given by the act of 1869. Under the act of 1870, the parties composing the Western and Atlantic Railroad Company proposed to take the lease at $25,000 00, monthly rental, complied with its other provisions, and the contract of lease was effected. On the 28th of February, 1874, the legislature passed an act requiring the presidents of all the railroad companies in the state to return on oath to the comptroller general, the value of the property of their respective companies, * * * to be taxed as other property. Under the last act, it is claimed that the lessees of the State Road (the Western and Atlantic Railroad Company,) are liable to be taxed on the whole value of the road and its appurtenances, and the comptroller general issued a *fi. fa.* for such a tax. An affidavit of illegality was filed by the company to this *fi. fa.,* which was overruled by the court below, and the company excepted.

1. The main point relied on to sustain the right of the state to impose this tax, notwithstanding the guarantee of the 11th section of the act of 1870, is that provision of the Code, section 1682, which enacts that "in cases of private charters hereafter granted, the state reserves the right to withdraw the franchise unless such right is expressly negatived in the charter." By virtue of the power thus reserved to the state in this section of the Code, it is claimed that the exemption granted by the above recited 11th section of the leasing act is repealed by the act imposing the tax complained of, and that the state had the right to repeal it. The power of the state so reserved, and as held in the cases of *The Central Railroad and Banking Company,* and of *The Southwestern*

*Railroad vs. The State*, decided at this term, is not denied; nor that the act of 1874 may and does operate as a repeal of the exemption in the charter of those companies. Nor are the rulings in the case of *The Union Branch Railroad Company vs. The East Tennessee and Georgia Railroad Company*, 14 *Georgia*, 328, and in *The West End Street Railroad Company vs. The Atlanta Street Railroad Company*, 49 *Georgia*, 158, contested. But the reasons for those decisions do not apply to the question involved in the case under consideration. That question, when brought to a single issue in this case is, does section 1682 of the Code make the guarantee or *contract*, or *pledge*, given in the lease act of 1870, as to how far the lessees may be taxed, revocable at the will of the legislature? Had there been no provision in that act making the leasing company a corporate body, no question could arise, no one would claim that any tax could be assessed beyond the limit set in the act, to-wit: one-half of one per cent. on its net income; for that is substantially what the guarantee means: 4 Wheaton, 418; 3 Wallace, 72; 13 *Ibid.*, 266; 16 *Ibid.*, 244. Does the fact that the lessees were required by the act to become a corporate body, take from them the right to claim that the terms of the bargain, the contract, were inviolable? The parties offering to take the lease had to make their proposition. That proposition it was necessary for the governor to accept, and to record his acceptance. The names of the persons proposing to take the lease were to be entered on the minutes of the executive department. All this was specially required by the act. When this was done, the act declares "that said persons shall then and from that time be and become a body corporate and politic for the term of twenty years," etc. Becoming a corporation was an incident to the contract of lease. That contract was complete and perfect in all its parts when the above requisites were met. When all that was done and the contract thus perfected, the lessees were *ipso facto* to be and become a corporate body. If thus having corporate powers cast upon them, caused them to lose any guarantee as to taxation, or in anywise af-

fected such guarantee, would it not equally affect any other right secured by the contract of lease, to-wit: the right to pay only so much as was agreed upon as a monthly rental, or the right not to be disturbed by the state so long as they kept the contract and made the stipulated payments? What portion of the contract would not be repealable under such a construction? The provision that only a certain tax should be assessed, was as much a part of the contract of lease, as was the time that the lease was to run, or the stipulation as to disturbance, or any other pledge given in the act. The legal necessity of the lessees becoming a corporate body as required by the leasing act, did not vitiate or in any wise lessen their rights under the contract. That was a condition the state put upon the lessees, to take effect after the acceptance of their proposition and the making of the proper record by the governor. To say that this carried all the provisions of the leasing act—all the terms of the leasing contract, within the repealing power of the legislature, under section 1682 of the Code, would be to make an Aaron's rod of the corporate feature of the act, and would establish a principle which would make all rights growing out of contracts with the state, revocable, provided corporate powers were in anywise conferred upon those to whom such rights were plighted, even though a price of great value may have been paid to the state and was to continue to be paid as a consideration for the contract. It would be far more just and consistent with principle and all recognized rules of right, to say that the contract drew within itself the corporate powers of the lessees and made them a part of itself, and that this corporate faculty of the company was so embodied in the contract as not to be itself revocable. I say that this would be more reasonable and accord more with all correct principle, than to hold that the mere making of the company a corporate body, would reduce great and important rights secured by the express terms of a solemn covenant which imposed weighty burdens and obligations, to temporary stipulations liable to be withdrawn at the will of one of the contracting parties. But it is not necessa-

ry to go this far, that is, it is not necessary to hold that the part of the leasing act which makes the lessees a corporation, is not repealable.    All that is requisite for the conclusion reached is to maintain that no specially guaranteed right or exemption given in the contract can be revoked—and that this is not the case of an ordinary charter granted *ex gratia* by the state which would come within section 1682 of the Code. But rather is a direct express contract, formally agreed upon as other contracts by the two parties, with an express grant and guaranty by one party, and an equally express promise to pay that party and to assume burdens by the other for the benefit of the first, and neither can without the consent of the other, annul, repeal or change the mutual stipulations of the covenant.

Ordinarily, a charter is obtained upon the application of the corporators, and it is a matter of grace or favor on the part of the state to grant it.    Even such a charter is a contract, and no right given by it could be violated by hostile or repealing legislation, unless so reserved in the charter, or unless the law in force at the time, provided that it might be done. If by a general law, thus in force, a franchise may be withdrawn, (unless the right to withdraw is negatived in the charter,) the applicants know it and accept accordingly.    In such cases there is no contract with the state except as expressed in the terms of the charter, and the power of the state over it is a part of it.    A privilege is asked and granted, and it is accepted *cum onore*.    But when the state, as a matter of public policy, desires its citizens (a majority of these lessees were required to be citizens of the state,) to make a contract with it in relation to a great public work, to take that work off the hands of the state—to pay at least $300,-000 00, annually, as a rental, in monthly installments, to bind themselves to the extent of $8,000,000 00 to protect that property and to return it as received, when the lease expires, with other obligations upon them, and covenants in the very proposals it tenders as an inducement to get the contract accepted, that they shall enjoy certain exemptions, and bear only

a certain public burden, and then makes the further provision in its offer, that when all this is accepted, agreed upon and recorded, they, the acceptors of the state's proposition, shall have cast upon them a corporate existence, it surely cannot be that this last condition—a condition elected by the state of its own volition, and doubtless wisely done, shall be held to invalidate or weaken the covenants it had made, and put the power in the state to revoke the express guarantees of its contract. The terms of the contract were complete, and though the state required the lessees to be and become a corporate body, that did not make such a charter as destroyed the binding force of the guaranteed conditions of the lease. The right does not exist by the leasing act in one party to revoke a highly important stipulation in the contract, and at the same time to demand that the other shall abide by and perform all the others. Again, it is said in section 1682, that in cases of private charters the right to withdraw the franchise is reserved to the state, "unless such right is *expressly negatived* in the charter." Calling the whole of the lease act the charter, section 11th provides that " said company shall have the same exemptions, privileges, immunities, rights and guarantees, and shall be subject to the same liabilities, disabilities and *public burdens,* of said railroad companies last mentioned, (the Central, Georgia and Macon and Western,) *and no more,* in all cases where this act is silent, and has made no provision on the subject." Now, we hold that under the term *public burdens,* the right to tax is expressly asserted—to tax, in short, one-half of one per cent. of the net income. That is, the lease company shall be subject to be taxed to that extent, and shall have the same exemption, etc., of the other mentioned companies. If the act had declared that these exemptions, and this limitation on its liability to taxation should be irrepealable or should never be infringed, it would be clear that the power to revoke would be expressly negatived. Is not the enactment that it shall be subject to be taxed a certain rate *and no more,* equally as strong a negative upon the right of the state to go beyond that limit during the term of the

lease, as the words suggested ? If a charter were granted for twenty years, with the additional words, *which term shall not be lessened,* would those words not be a negation of the right to revoke? When the guaranty to the Georgia Railroad was, that it should not be taxed beyond a given limit, and that guaranty was irrevocable, and the state made as a part of its terms of lease a guaranty that this lease company should be liable to be taxed as the Georgia Road *and no more,* was it not a grant of the limited exemption just as that road held it; that is, was not the guaranty as irrevocable in the one instance as in the other?

These last propositions are not given as legal convictions. They are rather thrown out as auxiliary suggestions, lending aid in support of the argument in favor of the judgment rendered. But it may be said, that they might be of no little force, if it were necessary to hold them, in order to protect a great and express contract from being swallowed up and losing its binding force, because one of the contracting parties assumed by force of law a corporate existence as an incident to or consequent of the contract.

2. We entertain no doubt that under the eleventh section of the lease act the Western and Atlantic Railroad Company may be taxed one-half of one per cent. on its net income. That was one of the public burdens to which the other three companies were subject, and it is expressly made liable to the same. That the terms *public burdens* include taxes, it is not necessary to argue. The company paid this, and was liable to no more, and there was error in the judgment of the court below overruling the affidavit of illegality.

Judgment reversed.

McCAY, Judge, concurring.

On the 24th of October, 1870, the general assembly passed an act entitled an act to authorize the lease of the Western and Atlantic Railroad, and for other purposes therein mentioned.

Section 1st authorized the governor to lease said road, de-

pots, stock and appurtenances, to a *company to be formed*, for twenty years, at a rental of not less than $25,000 per month, and provided that should the company fail or refuse to pay the rent, the lease should be *forfeited*, and made it the duty of the governor so to declare, and to take possession, etc.

Section 4th provided that as soon as the terms of the lease should be agreed on and the names of the lessees entered on the minutes of the executive department, such persons shall then and from that time be a body corporate for the term of twenty years, under the name of the Western and Atlantic Railroad Company, and gave them the usual powers of a corporation, for the purposes of their business.

Section 11th is in these words: "Said lessees shall never charge a higher rate of local freights on said road than the average rate charged by the Georgia Railroad, the Central Railroad, and the Macon and Western Railroad, for like local freights over said roads, and the *said company shall have the same exemptions, privileges, immunities, rights and guarantees,* and shall be subject to the *liabilities, disabilities and public burdens of said railroad companies, and no more,* in all cases where this act is silent: *Provided* that this act shall not be construed to confer banking privileges on said company."

Section 2d, after providing that on a failure of the lessees to pay the rent, the lease shall be forfeited, etc., declares: "But the faith of the state is hereby pledged to said company that *they shall, in no case, be disturbed by the authority of the state* so long as they keep the contract on their part, and make the payments when due."

By the charters of the three railroad companies mentioned in section 11 of the lease act, said roads were at that time exempt from taxation at any higher or greater rate than one-half of one per cent. on their net income. The charters of the Central and Georgia Railroads were charters granted before 1863, and were not under section 1636 of the Code of 1863. The exemption of the Macon and Western Railroad was under the act of 1869, and was subject to withdrawal.

Held, 1st. That this lease, with all its incidents, is a con-

tract between the state of Georgia and the lessees; that the provision for a forfeiture on the failure to pay is a provision for the benefit of the state, and not of the lessees, and is optional on the part of the state, on a failure of the lessees to pay, and stands on the footing of the right of a landlord' to dispossess his tenant on a breach of his contract.

2d. That by the terms of the act the lessees, when the lease was effected, became *ipso facto* a corporate body, and hold and are bound to accept corporate powers, as a condition of the contract.

3d. That according to the 11th section of the lease act, the state, upon its part, stipulated that said lessees should bear the public burdens and have the exemption of said three railroads, and the said lessees contracted that they would undertake such "public burdens." That one of said "public burdens" was a tax of one-half of one per cent. on its net income, and one of said exemptions was that no other or higher tax should be imposed.

4th. The corporate powers of said Western and Atlantic Railroad Company stand upon the same footing as the other rights, privileges, and duties it holds and is subject to under the lease act; and it holds them free from any disturbance on the part of the state, either by the executive or legislative authority of the state, so long as they pay the rental—the tax stipulated of one-half of one per cent. on their net income, and perform the other duties undertaken in the contract.

5th. If the tax act of 1874 applies to the Western and Atlantic Railroad Company at all, beyond the provision for the tax of one-half of one per cent. on the net income, it is in violation of article I., section 10, paragraph 1 of the constitution of the United States, and is void, as impairing the obligation of the lease contract authorized by the act of October 24th, 1870.

WARNER, Chief Justice, concurring.

The act of 1870, authorizing the lease of the Western and Atlantic Railroad, incorporated the lessees thereof into a body

corporate and politic, for the term of twenty years, and granted to it certain specified powers and privileges, as specified in the act of incorporation.   By the 11th section of the act it is declared that said *company* shall have the same exemptions, privileges, immunities, rights, and guarantees, and shall be subject to the same *liabilities*, disabilities, and *public burdens*, as the Georgia Railroad and Banking Company, the Central Railroad and Banking Company, and the Macon and Western Railroad Company, and no more, in all cases where this act is silent and has made no provision on the subject.   One of the liabilities, and public burdens, of at least two of the railroads mentioned, was to pay a tax to the state not exceeding one-half of one per cent. per annum on the net proceeds of its investments in the one road, and one-half of one per cent. upon its annual net income in the other, and the said two roads, under the original charters thereof, were exempted from a higher rate of taxation, and such was the liability and public burden as to *taxation*, imposed by its charter, on the Western and Atlantic Railroad corporation.   The charter to the company being a *private* charter, and the state having reserved the right to withdraw the franchise granted, the right of the state to do so not being *expressly negatived* in the charter, therefore it was competent for the state, in the exercise of her sovereign power of taxation, to tax the *actual value of the lease* owned by the company as *its property*, in the same manner as other property of the people of the state is taxed, and the exercise of such power on the part of the state, as provided in the act of 1874, did not impair the obligation of the contract made between the state and the company, for the reason that the state reserved the right to do so in making the grant, which was *accepted* by the company, with that reservation on the part of the state.   The judgment of the court below should have been that the defendant was liable to be taxed on the *actual value of the lease* held and owned by the corporation as its property in its corporate capacity, inasmuch as by the 9th section of the act the lease is recognized as personal property.