ELDRED, Respondent, vs. SHERMAN, Appellant.

*January 12 — February 2, 1892.*

*Landlord and tenant: Construction of lease: Renewal: Tenancy by sufferance: Notice to quit.*

1. A lease provided for a rental of $240 per annum, payable quarterly, but stipulated that if the payments were promptly made the lessor should accept $40 per quarter. It further stipulated that at the end of the term the lessor might renew the lease at a rental of seven

Eldred vs. Sherman.

per cent. of the appraised value of the premises, "to be paid in the manner aforesaid, and subject to all the conditions aforesaid." Prior leases of the same premises between the same parties had been the same in all respects except as to the amount of the rent and of the stipulated deduction for prompt payment. Such deduction had varied but had never exceeded one third of the rental. *Held,* that upon the making of a new lease the lessee was not entitled to have it stipulated that the lessor should accept $40 per quarter in case of prompt payment, without regard to the amount of the rental determined by the appraisal of the premises. At most he would be entitled only to a deduction of one third of the rental so determined.

2. The lessee having refused to accept a lease providing for rent according to the appraisal with a deduction of one third for prompt payment, and the lessor having repudiated the tenancy by refusing to accept further rent from the lessee after the term, the possession of the latter became wrongful and he was not entitled to the notice required by sec. 2183, R. S., to terminate a tenancy by sufferance, although after the term the parties had been trying to agree upon the terms of a new lease.

APPEAL from the Circuit Court for *Milwaukee* County.

Ejectment in the circuit court to recover a certain lot in the city of Milwaukee. It is conceded that plaintiff is, and for more than thirty-five years last past has been, the owner in fee of the lot, and that defendant was in possession thereof when this action was commenced. The contention of defendant is that he so occupied the lot as the tenant of plaintiff, which tenancy had not terminated.

The defendant went into possession of the lot in 1864, under a lease from the plaintiff for six years. At the end of the term (1870) another lease for five years was given by plaintiff to defendant; and in 1875, 1880, and 1885, respectively, other leases of the lot were so given, each for a term of five years. Except as to the amount of rent, these five leases were alike. The rent stipulated in the lease of 1885 was $240 per annum, payable (as in all the leases) quarterly on the 1st days of August, November, February, and May,— the lessee to pay all taxes and assessments on the lot. It

was stipulated therein that " if said quarterly payments of rent are paid within three days after they respectively become due, and all taxes and assessments are promptly paid, then the said lessor agrees to accept of $40 per quarter; otherwise to receive $60 per quarter." Each lease contained a stipulation for a deduction from the annual rent for prompt payment, similar in form to the above, except the amount of rent and of deductions therefrom varied in the different leases as follows: In the lease of 1864 the annual rent was $100, reduced by prompt payments to $20 per quarter; in the lease of 1870 the annual rent was $200, reduced in like manner to $40 per quarter; in the lease for 1875 the annual rent was $240, reduced on same terms to $50 per quarter; and in the lease of 1880 the annual rent was $200, reduced to $40 per quarter.

It seems that defendant owned all the improvements on the lot. A stipulation in each lease gave the plaintiff the option, at the end of the term, to terminate the tenancy by paying the defendant for his improvements, or to renew the lease for a further term of five years. To ascertain and fix the amount of annual rent for such ensuing term it was stipulated in each lease that the lot, exclusive of the improvements, should be appraised by three disinterested men, one to be chosen by each party, and the other by the two thus chosen, and the annual rent should be seven per cent. upon such appraised value, " to be paid in the manner aforesaid, *and subject to all the conditions aforesaid.*"

Immediately upon the expiration of the lease of 1885,— that is, on May 1, 1890,— the defendant asked plaintiff for an appraisal of the lot under the stipulations for renewal in the lease, to which plaintiff assented, and thereafter three appraisers were chosen in the prescribed manner, and proceeded to consider the matter submitted to them, but were unable to agree on an appraisal. August 7, 1890, two of the appraisers made an award in writing, appraising the lot

at $175 per front foot, or $5,250,— the lot containing thirty feet front.   Plaintiff thereupon made out and tendered to defendant a lease of the lot for five years from May 1, 1890, at the annual rental of $367.50, or $91.87½ per quarter, with a stipulation to reduce it one third — that is, to $61.25 per quarter — for prompt payment of rent, taxes, and assessments; otherwise the proposed lease contained the same covenants and stipulations as that of 1885.    The defendant refused to execute or accept such lease.    Thereupon, because the three appraisers did not agree on the appraisal, plaintiff requested defendant to join in a second attempt to procure such appraisal by again choosing appraisers for that purpose.    September 2, 1890, defendant refused to comply with the request, but signified that he considered the appraisal already made sufficient, and that he would sign a lease thereunder whenever one drawn up in proper form should be tendered him.    By this the defendant meant that such lease should contain a stipulation reducing the annual rental to $40 per quarter for prompt payment.    In the mean time, on August 2, 1890, defendant tendered plaintiff $40 for rent of the lot to August 1st, which plaintiff refused to accept.

This action was commenced September 5, 1890.    The foregoing facts appear from the pleadings, testimony, and findings of the court, which it is unnecessary to state more in detail.    The court gave judgment for plaintiff for the recovery of the lot, and for the rents, issues, and profits thereof, assessed at $40 per quarter.    Defendant appeals from the judgment.

*C. E. Monroe*, for the appellant.

*David S. Ordway*, for the respondent.

LYON, C. J.   I. The defendant maintains that under the agreement of renewal contained in the lease of 1885, to the effect that the renewed lease shall be subject to all the con-

Eldred vs. Sherman.

ditions contained in the expiring lease, there should be inserted in the renewed lease a stipulation that, if payment of rent, etc., shall be promptly made as therein specified, the lessor agrees to accept $40 per quarter in full for the rent. Defendant was willing to accept and execute a lease based upon the defective appraisal if that stipulation were inserted therein. On the other hand, the plaintiff tendered a lease, based upon that appraisal, with a deduction for prompt payment of one third from the annual rent, as ascertained by the appraisal,— that being the percentage of deduction in the lease of 1885. Both parties thus adopt and ratify the appraisal, although made by but two of the appraisers, and rest their controversy on the question whether the $40 stipulation should be inserted literally in the renewed lease. If it should be inserted therein, the defendant is not in default, for he offered to accept and execute such a lease; otherwise he is in default.

The lease of 1885 (as did all the preceding leases) contains special provisions for ascertaining the annual rental of the leased lot on the renewal of the lease at its expiration. These provisions seem to cover the whole subject of the amount of rent to be reserved in the renewed lease. Such amount is not affected by the amount thereof reserved in the old lease, but is ascertained upon an entirely new and independent basis. In each lease the deduction for prompt payment from the agreed annual rental was arbitrarily fixed at from one sixth to one third of such rental. These circumstances tend strongly to show that the stipulation that the renewed lease should be subject to all the conditions of the expiring lease was not intended to include, and does not include, any conditions therein concerning the amount of annual rent or deductions therefrom for prompt payment. We are inclined to the opinion that such is the true construction of the covenant for renewal in the lease of 1885 and in the preceding leases.

But the plaintiff was tendered a lease in which the annual rental is based upon the valuation of the lot, which both parties have approved, which lease contains a deduction of one third of such rental for prompt payments. This is the rate of deduction in the lease of 1885, and a higher rate than is specified in either of the four preceding leases. Because the plaintiff has thus proposed to make such deduction, we will assume, for the purposes of the case, that the stipulation for renewal requires that a deduction for prompt payment be specified in the new lease. We cannot conceive that the parties intended that the rent, if promptly paid, should be precisely $40 per quarter, no more, no less, without regard to the changing value of the lot. It seems much more reasonable to believe that the assumed stipulation in the lease of 1885 for a deduction for prompt payment goes to the *rate* of such deduction, and does not call for a stipulation that the reduced rent should be just $40 per quarter in any and all contingencies. A deduction of one third from the annual rental is the highest rate of deduction that can possibly be claimed, and that is the rate provided for in the proposed lease which the defendant refused to accept. This construction affords a certain guide in any contingency for ascertaining the deduction on each renewal of the lease; whereas, should the lot be appraised so low that the annual rental should be less than $160, the construction contended for by defendant would render the stipulation entirely nugatory.

Our conclusion is that defendant is in default for not accepting and executing the lease tendered, or for not joining in proceedings for another appraisal when requested to do so by plaintiff.

II. The learned counsel for defendant, in his very able and ingenious argument, maintained that, admitting the defendant is in default for the reasons just stated, still he is the tenant of the plaintiff, either at will or by sufferance;

Eldred vs. Sherman.

and hence that this action cannot be maintained, because the notice required by statute to terminate such tenancy has not been given. R. S. sec. 2183.

The lease of 1885 expired May 1, 1890. The parties immediately set about obtaining the necessary *data* for a renewal thereof. Such *data*, to wit, the appraisal of the lot, was obtained, which, although defective, was approved and adopted by both parties. Then the defendant refused to take a lease, although one in proper form was tendered to him, and also refused to join in obtaining a new appraisal. He thus put himself in default. True, the defendant remained in possession of the lot pending the attempt to agree on a new lease thereof, but he was not, in any correct sense of the term, a tenant of plaintiff, either at will or by sufferance. The plaintiff expressly repudiated any such relation by refusing to accept rent after the termination of the lease of 1885. The doctrine that a tenancy by sufferance necessarily arises when a man comes into possession of lands lawfully, but holds over wrongfully after the determination of his interest therein, has been qualified in this state and elsewhere in an important particular. It was held by this court in *Meno v. Hoeffel*, 46 Wis. 282, that, in order to create a tenancy by sufferance in favor of a tenant holding over after the expiration of his term, the consent of the landlord, either express or implied, to the continuance of the tenancy, is essential. The opinion in that case by the late Mr. Justice TAYLOR contains a statement of the reasons for such qualification, which need not be repeated here. It is quite true that the ruling in that case narrows the distinction which has sometimes been supposed to exist between tenancies at will and by sufferance. But since the adoption of our statutes on the subject of terminating such tenancies (sec. 2183, R. S.), which puts them on precisely the same footing, it is not unjust or unreasonable thus to narrow the supposed distinction between them; and

Lessard vs. The Northern Pacific R. Co.

were it entirely abolished the result would be, at most, the abolition of a mere technicality of the old law, for the retention of which no good reason can be given.

In this case the possession of the defendant, after the expiration of the lease of 1885, must be referred to the renewal lease which the parties intended to execute, and when such lease failed through the default of defendant such possession became wrongful from the expiration of the former lease. There is nothing in the case showing that plaintiff gave either express or implied consent to such occupancy, independently of the proposed renewal lease. It would be most unreasonable and unjust, after defendant's default, to charge plaintiff with the obligations of a landlord, and confer upon the defendant the rights of a tenant, merely because plaintiff allowed defendant to remain in possession of the lot after the lease of 1885 had terminated, pending a settlement of the terms and the execution of the new lease, which failed through defendant's default alone. Our conclusion is that after such default no tenancy existed, either at will or by sufferance; and hence the defendant was not entitled to the statutory notice required to terminate a tenancy.

*By the Court.*— The judgment of the circuit court is affirmed.