DULUTH, SOUTH SHORE & ATLANTIC RAILWAY COMPANY, Respondent, vs. DOUGLAS COUNTY, imp., Appellant.

*April 8 — April 25, 1899.*

*County boards: Proceedings: Evidence: Delegation of authority: Appeal: Employment of attorney: Taxation: Exemptions: Railroads.*

1. In the absence of a law making the county clerk's record of the proceedings of a county board the only evidence thereof, a transaction by the board, not entered upon its minutes, may be established by parol.

2. A county board may delegate purely ministerial or executive power to a committee, and its action, within the scope of such delegated power, will bind the county.

3. A county board, having determined, on condition, to appeal from a judgment against it to the supreme court, may properly delegate to a committee of its members authority to investigate as to the existence of the condition and to further act in regard to the appeal according to the wish of the board; and the delegated power to cause the appeal to be taken in such a case, carries with it, by implication, power to employ an attorney for that purpose, the district attorney of a county not being obliged to attend to its litigation in the supreme court.

4. The statute of this state exempting from taxation property of railroad companies necessarily used in operating their roads in this state, applies only to such property as reasonably satisfies the call of the statute in regard to actual use for railway purposes, not to property held in contemplation of future use.

5. The rule that the limit of the exemption of railway property from taxation is the limit of its right to take property for railway purposes by the exercise of the right of eminent domain is to be understood thus: Under a statute which makes use for railway purposes a condition of the exemption, the limit of the right to take property *in invitum* bounds the extent to which the exemption can go; while the condition as to present use determines the present limit of the exemption.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit for Douglas county: A. J. VINJE, Circuit Judge. *Reversed.*

Action to avoid a tax of $1,231.08 levied on lands of the

Duluth, South Shore & Atlantic R. Co. vs. Douglas County.

plaintiff by the proper officers of the city of Superior, Wisconsin, in the year 1895. The tax was contested under sec. 1038, R. S. 1878, exempting from general taxation the property of railway companies necessarily used in operating their roads. In 1888 a tract of land 300 feet wide and about 5,500 feet long, containing 38.568 acres, lying at right angles with, and extending about 1,700 feet into, the bay of Superior and to the dock line thereof, was conveyed to the president of the plaintiff corporation in trust for its use solely to meet future needs for railway and water traffic. In 1893 the land was conveyed to plaintiff and it has ever since owned and held the same exclusively for contemplated use for terminal facilities for its line of road. It has no other terminal facilities for its railway system at the head of the lakes. Such facilities are necessary to a complete railway system in order to enable the corporation to handle business at its western terminus. Except as hereinafter stated, the entire tract of land mentioned, at the time the tax was levied, was vacant and unoccupied, and it had been that way since its acquirement by the corporation, though all the time held in good faith for terminal facilities for plaintiff's road. Plaintiff has all the time contemplated improving and using the land as soon as its financial circumstances would reasonably permit. The use of the land in 1895, when the tax was levied, was necessary for the most convenient and profitable operation of plaintiff's railway system and the conduct of its business, but lack of funds interfered with its preparation for such use and has operated the same way ever since. At the time of the trial, which was three years subsequent to the levy of the tax, plaintiff was still uncertain as to when it would be able to improve, occupy, and use the land. Since 1893 a small strip of land about 120 feet wide and about 1,500 feet long, containing 3.898 acres, lying in the southwest corner of the larger tract, has been partially occupied and used, there being three railway tracks along the west-

erly side thereof and a roundhouse near the south end. Such small parcel of land is of ample size for all the improvements located thereon, it being actually occupied for only about one third of its width except at the extreme south end. The tax in controversy was levied upon that portion of the land wholly unoccupied down to the time of the trial. The court below, on the foregoing facts and others showing that the contemplated terminal facilities for which the land was acquired were a necessary adjunct to plaintiff's railway system in order to enable it to fully perform its duties as a transportation corporation at the time the tax was levied, though not actually so used because of the financial condition of plaintiff, held as a matter of law that the land was exempt from taxation and rendered judgment accordingly, from which this appeal was taken.

When the appeal was called for argument in this court a motion was made to dismiss, based on an affidavit of the county clerk and one by an employee in the county clerk's office to the effect that there were no proceedings of record directing or authorizing the appeal, and that in their judgment no action in that regard was ever taken by the county board; also an affidavit by one of the attorneys for respondent, to the same effect, made on information and belief. The motion was opposed by affidavits of seven of the members of the county board to the effect that the subject of taking the appeal was discussed by the members of the board in session September 26, 1898; that it was determined at that time that such appeal should be taken, subject, however, to the wishes of the officers of the city of Superior, where the land was located, and that the matter was referred to the finance committee with power to carry out the views of the board. There was an affidavit by the chairman of the finance committee to the effect that, pursuant to the action of the county board had as stated, such committee consulted with the officers of the city of Superior and directed Mr. H. H. Grace to

appeal the cause to this court. There was also an affidavit by Mr. Grace and one by Mr. Sloan, the district attorney corroborating the affidavit of the chairman of the finance committee, and to the effect that the appeal was taken pursuant to the committee's direction. There was also an affidavit by the city attorney of the city of Superior to a similar effect.

For the appellant there was a brief by *H. H. Grace* and *Isaac Ross*, and oral argument by *Mr. Grace* and *A. C. Titus*.

For the respondent there was a brief by *Catlin, Butler & Lyons*, and oral argument by *Thos. E. Lyons*. To the point that the lands in question were exempt from taxation, they cited Stats. 1898, sec. 1038, subd. 14, and secs. 1211 and 1212; *Milwaukee & St. P. R. Co. v. Crawford Co.* 29 Wis. 116; *Milwaukee & St. P. R. Co. v. Milwaukee*, 34 Wis. 271; *Ramsay Co. v. C., M. & St. P. R. Co.* 33 Minn. 539; Lewis, Eminent Domain, §§ 279, 393; 6 Am. & Eng. Ency of Law, 540, 541; *In re Staten R. T. Co.* 103 N. Y. 251; *Chicago, St. P., M. & O. R. Co. v. Bayfield Co.* 87 Wis. 188; *Worcester v. Western R. Corp.* 4 Met. 564; *Matter of New York C. & H. R. R. Co.* 77 N. Y. 248; *Ford v. C. & N. W. R. Co.* 14 Wis. 609; *Chicago, M. & St. P. R. Co. v. Crawford Co.* 48 Wis. 666; *United N. J. R. & C. Co. v. Jersey City*, 55 N. J. Law, 129; *Trinity Church v. Boston*, 118 Mass. 164; *Northern P. R. Co. v. Carland*, 5 Mont. 146; *Fisher v. Farmers' L. & T. Co.* 21 Wis. 73; *Plunkett v. M., S. S. M. & A. R. Co.* 79 Wis. 222; *Grosse v. C. & N. W. R. Co.* 91 Wis. 482; *Mills & Le C. L. Co. v. C., St. P., M. & O. R. Co.* 94 Wis. 336.

MARSHALL, J. The fact that there is no record of any proceedings of the county board of the appellant, directing the taking of this appeal, is by no means necessarily fatal to it. Proceedings of county boards in such matters are often conducted in an informal manner and the records thereof loosely kept or not kept at all. It is not a subject affected by any

law making a record the only evidence of it; therefore if the board acted in the matter, it appearing that written evidence thereof was not preserved, the facts in that regard may be established by parol. Dillon, Mun. Corp. § 300; Jones, Ev. § 203. If a record were kept it would be the best evidence of the proceedings, but the omission by the proper officers to preserve written evidence of their doings does not make the subsequent proceedings, taken in good faith pursuant thereto, invalid. It follows that the proof presented here on the motion to dismiss the appeal, showing that the county board considered the subject and acted in the matter, amply establishes that it was determined that an appeal should be taken if desired by the officers of the city of Superior, and that it was referred to the finance committee of the board with power to consult with the city officers and to further act. The power with which the committee were clothed was purely ministerial and executive, so we need not spend time to vindicate the authority of the board to delegate it. Municipal boards commonly act through committees in such matters, and without judicial condemnation that we are aware of. The committee, under the circumstances, was the mere instrument of the board to carry out or execute its will, not to pass upon and determine a matter resting in its discretion.

There can be no controversy as to the authority of the committee to employ Mr. Grace to take the appeal, when it is conceded that it possessed power to direct the appeal to be taken. It was not the duty of the district attorney to attend to the litigation in this court, therefore, as a matter of course, authority to direct the appeal to be taken carried with it, by implication, power to employ the usual means to that end.

The result of what has been said is that the motion to dismiss must be denied with motion costs.

The question for consideration on the appeal may be stated

as follows: Is land, acquired and held by a railway corporation in good faith solely for railway purposes, and necessary to enable it to perform the duties incident to its organization to the best advantage, and which it intends to put to actual use in the conduct of its business in the near future, no definite time being fixed therefor, the land since its acquirement having remained wholly unoccupied largely because of want of financial ability of the corporation to improve the same, and still awaiting use on that account, exempt from taxation, though within limits that the company might presently go by the exercise of the power of eminent domain in order to obtain land for its railway purposes? Or, to state the proposition more concisely, by leaving out the particular circumstances that characterize this case, Does the exemption from taxation of lands held for railway purposes, under the statute of this state, follow, in time, actual occupancy and use, instead of the right to take by the exercise of the power of eminent domain? The learned trial court held to the latter view, supposing, no doubt, and not without good reason, that such was the law as determined by this court.

To reach a correct conclusion at this time, the scope of the rule that the right of exemption from taxation follows the right to take by condemnation proceedings and that the limit of the one is the limit of the other, the reason for such rule, the history of the subject in this state and elsewhere from whence the rule was taken by adoption, must all be considered in connection with the language of our statute, which, it will be observed when we come to that, differs materially from many statutes found in other states.

The rule under discussion was at the outset a rule of construction, restricting railway tax exemption statutes, and such exemption in the absence of any statute on the subject, within some reasonable limits. In the early history of such legislation the public demand for encouragement for railway

enterprises led to the passage of exemption statutes in such general language as to be open to harmful construction. Many laws were passed exempting, generally, all the property of railway companies from taxation, giving such companies ground to claim such exemption without reference to the location of the property or its kind, or the purposes to which it was devoted, or whether used at all. That situation was rendered peculiarly dangerous to the public interests, as was early demonstrated, because the exemption was usually embodied in the corporate charter, and after the acceptance of the charter was free from legislative interference under the constitutional inhibition against impairing the obligation of contracts. *Wilmington Railroad v. Reid*, 13 Wall. 264. Hence the legislative intent by, and legitimate scope of, the general exemption provisions, became of the highest importance.

One of the earliest cases where the subject was presented to a court of last resort for determination is *State v. Mansfield*, 23 N. J. Law, 510, decided in 1852. The charter of the railway company considered, after providing for certain transit duties to be paid, contained this language: "No other tax or impost shall be levied or assessed upon said company." The question presented was, Does such language include all property the corporation may own, without reference to location or use, or is its scope confined to such property as is necessary for the company to acquire and hold for the purposes for which it was incorporated? Upon due consideration and review of many authorities throwing considerable light on the question, the latter view was adopted by the court, and the general, sweeping exemption from taxation was, by construction, confined to such property as was necessary to the exercise by the company of its franchise as a transportation corporation. In *State v. Newark*, 26 N. J. Law, 519, the question was again presented to the court, and OGDEN, J., in deciding the case, referred to the legislative

policy, in the infancy of railway construction, to encourage
capitalists to risk their fortunes in such enterprises, as hav-
ing led to the enactment of the unguarded, general exemp-
tion from taxation, and observed that the legislature must
at the outset have intended some limit to such exemption
and that the right should not extend to all property that a
railway corporation might acquire by purchase or otherwise;
that it should stop at the boundary line of what was neces-
sary to maintain the works of the corporation and furnish
suitable protection for goods and accommodation for travel-
ers; in short, to what was necessary to fulfill the company's
duties as a railway corporation.    So certain property af-
fected by the decision, which was vacant and not used at
all by the railway corporation, was held subject to taxation.
It will be seen that the court, up to this time, had not
reached any very definite test.    It had proceeded cautiously
in an endeavor to do by construction what the legislature
ought to have done in the first instance, and at the same
time not violate the constitutional inhibition upon the im-
pairment of contract obligations.    The subject was discussed
in *State v. Newark*, 25 N. J. Law, 315, where it was urged
upon the court that the fact that the corporation paid a tax
on its capital stock required a more liberal construction of
the exemption statute than that adopted where no such tax
was paid; and the court held that such circumstance could
not vary the rule of construction limiting the exemption to
property acquired and used for railway purposes; that the
circumstance of convenience, or acquirement of property in
anticipation of the exigencies of the corporate business in
the future, could not bring the property within the exemp-
tion so long as the fact remained that it was not presently
occupied, used, and necessary for corporate purposes.    Later,
in *State v. Hancock*, 33 N. J. Law, 315, the court laid down
the rule quite distinctly that the limit of exemption from
taxation is the limit of the right to take by condemnation.

That has since been generally followed in other states and may be said to be established as the general rule. *Vermont C. R. Co. v. Burlington,* 28 Vt. 193; *State v. B. & O. R. Co.* 48 Md. 49; *Ramsey Co. v. C., M. & St. P. R. Co.* 33 Minn. 537; *Western & A. R. Co. v. State,* 54 Ga. 428.

There are cases that hold otherwise, where the language of the statute clearly indicates that a license tax or tax on capital, or some other indirect tax, shall take the place of all other taxes on the property without reference to kind or use. Such was the case in *Milwaukee E. R. & L. Co. v. Milwaukee,* 95 Wis. 42, where the law was given the widest scope the fair meaning of the words would indicate, and made to cover property not used, because the words "used for railway purposes" were omitted from the act under consideration. See, also, *Osborn v. N. Y. & N. H. R. Co.* 40 Conn. 491, and *Brightman v. Kirner,* 22 Wis. 54.

The discussion of the question of the exemption of railway property from taxation commenced in Massachusetts much earlier than in New Jersey, but under somewhat different circumstances, yet the result reached may be said to have furnished the light which led to the establishment of the rule of construction putting a reasonable limit upon the early unguarded exemption statutes. It being settled that railway corporations were in some respects public and their property devoted to the public use, so that constitutional power existed to confer upon such bodies the right to exercise the sovereign power to take property by right of eminent domain, the question arose as to whether railway property was so far devoted to the public use as to be exempt from taxation without legislative exemption. That came before the supreme court for adjudication in *Worcester v. Western R. Corp.* 4 Met. 564. It was there held that the taking of private property for railway purposes *in invitum* was consistent only with the theory that the purpose of the taking was public; that though the corporation was allowed

Duluth, South Shore & Atlantic R. Co. vs. Douglas County.

to derive profit from the use of the property taken, such profit was only a mere incident to the main use, which was public, hence that the rule that public property is not subject to taxation applied to such property owned by railway corporations as they were entitled to acquire by right of eminent domain, whether acquired that way or by purchase. Thus the rule that public property was exempt from taxation, in Massachusetts, stood in the same relation to the subject of such exemption when the title to such property was vested in a railway company, as the general legislative exemption did later in New Jersey and other states. The subject will be found very fully discussed in a recent case in Massachusetts, *Boston v. B. & A. R. Co.* 170 Mass. 95. This rule, exempting railway property from taxation upon the mere ground of its public character, has no place in our system.

It will be seen by the foregoing that the reason of the rule we are discussing, as viewed at the time of its establishment, was that the exemption from taxation grew out of the public character of the use to which the property was devoted, and that the purpose of the rule was to place a reasonable limit, by judicial construction, upon general exemption statutes not containing, by express language, any limitation whatever. The idea that present use had any significance did not occur in the judicial discussions except as evidence of present right to acquire by the exercise of the power of eminent domain. In a later class of cases, which arose under statutes worded in the light of experience under the earlier enactments, so as to restrain exemptions to property used for the purposes of the corporation, we find the right of condemnation referred to only as a limit of the extent of the exemption and the circumstance of use referred to as the test of time of the exemption. Such is *United N. J. R. & C. Co. v. Jersey City*, 55 N. J. Law, 129, where it was held that an authorized right of way, used throughout its whole

length for two tracks, though wide enough for additional tracks, was all in use within the meaning of the statute. Some substantial present use of the right of way throughout its entire course was recognized as necessary to satisfy the requirement of the words, "property used for railway purposes;" but it was said, in effect, that tracks throughout the entire length of the authorized way, though only occupying a part of it, was use of the whole, by a fair construction of the statute. That is reasonable, and doubtless the same rule applies to depot grounds, railroad and terminal yards. Such construction was given to a similar statute in Michigan (*Auditor General v. F. & P. M. R. Co.* 114 Mich. 682); and also in Minnesota (*Ramsey Co. v. C., M. & St. P. R. Co.* 33 Minn. 537). In the latter case it was distinctly held that present use definitely marks the limit of exemption.

In no case outside this state, at least that we have been able to find, and certainly in no case to which our attention has been called by counsel, where the statute plainly indicates present occupancy and use as a requisite of the exemption, has it been held that the language in that regard can be extended by construction to include lands that might be presently acquired *in invitum*, by applying the rule that the limit of the right of exemption and that of the right to condemn are identical. It is quite clear that the rule was not considered to admit of any such use when the subject was first presented in this court, as what follows will amply demonstrate.

In *Milwaukee & St. P. R. Co. v. Milwaukee*, 34 Wis. 271, the court had the whole subject involved on this appeal before it, some of the property taxed being in actual use by the railway company and some not, and some being conceded to be within the limit of the right to condemn, and some the subject of contest on that ground. In that situation it will be seen the court was called upon to determine the scope of our statute, both as regards the kind of property exempt

Duluth, South Shore & Atlantic R. Co. vs. Douglas County.

from taxation and the time when the exemption right will attach. The wording of 'the statute was the same then as now: "The track, right of way, depot grounds and buildings, machine shops, rolling stock, and all other property necessarily used in operating any railroad in this state," shall be exempt from taxation. Lyon, J., in delivering the opinion, said: "In looking through the adjudged cases on this subject, we find the rule laid down, that the exemption of railroad property from taxation is co-extensive with the right of the railroad company to take land for its use by condemnation [citing the New Jersey case above referred to, where the rule was first definitely announced in that state]. This rule seems reasonable and just and it may furnish a more certain test by which to determine, in any given case, whether specific railroad property is or is not exempt from taxation. For these reasons we are strongly inclined to adopt it as the correct rule." The court then proceeded to assign reasons which seemed to give to the rule the elements of certainty desired in order to reach a correct conclusion in the case, and then to apply it to the facts in determining the kind of property in suit that the exemption from taxation covered. When the court turned to the question of time when right of exemption should attach, it excluded the property that was not in actual use by the railroad company when the taxes were levied. There were some lots located in low, marshy grounds, held by the railway company for future use and wholly unimproved, as to which the court said, in substance, such lots and blocks, though acquired for depot grounds and yards, located in the marsh and never reclaimed or used for railroad purposes, were properly taxed; the statute exempts only such property as is necessarily used in operating the railroad, and as the parcels referred to are not and never have been used, they were subject to general taxation.

In *Chicago, St. P., M. & O. R. Co. v. Bayfield Co.* 87 Wis.

188, the court again had the subject up for consideration. There was, as before, property subject to controversy as regards its being within condemnation rights because of the use to which it was devoted, consisting of an elevator and some ore docks admittedly used in connection with the railway operations and in aid of its business, and other property not subject to controversy as regards being within condemnation privileges, but not used at the time of the tax levy or theretofore for railway purposes, but which, since acquired by the corporation, had remained wholly vacant and unoccupied, it consisting of irregular strips or parcels of land on the lake shore connected with the company's occupied and used lands. The court held that the elevator and ore docks were within the exemption because reasonably necessary to, and used in the conduct of, the corporate business, and that the outlying, unused parcels of land were also within the exemption because of the right of the corporation to take such lands by the power of eminent domain in anticipation of use therefor in the immediate future. The labor of the court was expended chiefly on the first and more important branch of the case,— the tax on the elevator and ore docks. The tax on the unoccupied parcels of land was small in amount and the question presented to the court as to that was disposed of without observing the significance of the statutory requisite of present use recognized and strictly applied in the earlier case.

The foregoing leaves no room for doubt respecting the proper construction of our railroad tax exemption statute. While present right of condemnation limits the kind of property to which the exemption may attach, present use for railway purposes limits the time when the exemption will attach. Any other construction would violate the letter as well as the spirit of the statute and our system of railway legislation, which evidently was intended to require a license tax in lieu of general taxes for property actually

devoted to *quasi*-public use and to leave all other property owned by the railway corporation to bear its ratable share of the public burdens. The mischief that would result from a contrary construction is well illustrated by the case before us, where it is contended for, to avoid taxes for a single year of over $1,200 on some thirty-four acres of very valuable land in the large and rapidly growing city of Superior, the boundaries of which land extend over three fourths of a mile beyond any of the tracks or improvements of the corporation, and which is not touched by any land used by the corporation except the small tract of about three acres located at one corner, which small tract is reached by respondent's cars only by using the tracks of another corporation. Certainly, till property so circumstanced contributes to the public revenues indirectly by some actual use in railway operations, it should contribute directly under the system of general taxation.

It need not be supposed by the foregoing that it is necessary that every part of authorized railroad grounds not actually presently occupied for railway purposes will be subject to general taxation. Some reasonable extent of constructive occupation necessarily attaches to and becomes a part of actual occupation. The contrary would be quite as unreasonable as to entirely disregard the requisite of present occupation and use. The statute is to have a liberal construction according to the long-established policy of the state. *Burns v. M. & M. R. Co.* 9 Wis. 450; *Ford v. C. & N. W. R. Co.* 14 Wis. 609; *Milwaukee & St. P. R. Co v. Crawford Co.* 29 Wis. 116; *Chicago, M. & St. P. R. Co. v. Bayfield Co.* 87 Wis. 188. But grounds for terminal facilities over a mile long and wide enough for upwards of twenty tracks, contiguous on one corner to a tract of about three acres actually occupied by tracks to the extent of about one acre, cannot reasonably be considered in use at all merely because of such contiguity, even though the occupied and unoccu-

pied parcels of land were acquired as a whole at the same time for railway purposes.

The late decision of this court, inconsistent with the views here expressed, is deemed a sufficient justification for treating the subject before us at considerable length. If the question were entirely new and free from complications, the plain letter of the statute would easily solve it, for, giving full scope to the doctrine of liberal construction in favor of the exemption, it is limited by the inflexible rule that words cannot, by judicial construction, be read into or out of a plain statute. It is a maxim for safe guidance that, in declaring the law where language is plain, "it is the duty of courts to confine themselves to the words of the legislature, nothing adding thereto, nothing diminishing." *Everett v. Wells*, 2 Scott, N. R. 525. In *Milwaukee E. R. & L. Co. v. Milwaukee*, 95 Wis. 42, where a tax exemption law was considered, expressly covering "all real estate owned by the corporation," and it was insisted that the legislative intent was only to exempt property *used for railway purposes*, this court said that, to decide that way would, in effect, read the words expressing the idea into the statute, in defiance of plain rules of statutory construction. Here the matter is reversed, for the words "used for railway purposes" are in the statute. In order to sustain the judgment appealed from we would have to read plain words out of the statute, expressing a contrary view.

The learned trial court made no mistake in finding the facts. He decided that when the taxes in controversy were levied, the land affected was wholly unoccupied; but supposing, very properly, from what was said in *Chicago, St. P., M. & O. R. Co. v. Bayfield Co.*, *supra*, that the circumstance of the land being owned and held in good faith for future use by the railway company, and that it might otherwise, *in invitum*, have been acquired for such purposes at the time the tax was levied, made it exempt from taxation, decided accordingly.

The judgment appealed from must be reversed, and the caused remanded with directions to enter judgment dismissing the complaint with costs to be taxed in favor of defendant.

*By the Court.*— So ordered.