WALTER OSBORN, COLLECTOR, *vs.* THE NEW YORK AND NEW HAVEN RAILROAD COMPANY.

The act of 1864 provided that railroad and horse railroad companies should pay a tax of one-fourth of one per cent. on the market value of their capital stock, and their funded and floating debt, and that this tax should "take the place of all other taxes on railroads and horse railroad property and franchises within this state." Held that all the property of a railroad company was exempted by the act from all other taxation, whether used for railroad purposes or not. [Two judges dissenting.]

A construction of a statute which subjects property to double taxation is always to be avoided if practicable.

And courts will incline against a construction which will increase rather than diminish the inequality of taxation.

ASSUMPSIT to recover taxes claimed to be due from the defendants to the town and city of New Haven, for which the plaintiff was tax collector; brought to the Superior Court in New Haven county, and reserved, on a finding of facts, for the advice of this court.

*Doolittle* and *Bennett*, for the plaintiff.

*Watrous*, for the defendants.

CARPENTER, J.   The plaintiff seeks to recover the amount of certain taxes imposed upon the defendants by the city of New Haven for the years 1864 to 1868 inclusive.   The property assessed is real estate in New Haven, and is used in part for railroad purposes, and in part for other purposes. But the view taken of the case by a majority of the court renders the nature and use of the property immaterial.

The defendants claim exemption under the statute of 1864, which imposes upon them a tax of three-fourths of one per cent. of the amount of their capital stock, at its market value, and their funded and floating debt.   That act contains the following clause, upon the construction of which the decision of this case turns:—" Which valuation so made, and approved or amended by the board of equalization, shall be regarded as fixing the basis or measure of value of such railroad and horse railroad, their rights, franchises and property within this state, for purposes of taxation ; and this sum or tax shall take the place and be in lieu of all other taxes on railroads and horse railroad property and franchises within this state."   The act of 1865, found also in the revision of 1866, contains the same provision, but raises the tax to one per cent., and allows an abatement from the valuation of the amount of cash on hand.

The plaintiff claims that this statute exempts only property used for railroad purposes, while the defendants claim that all property which a railroad company may lawfully own is exempt.

The language of this act is open to a grammatical criticism.   The words " railroads " and " horse railroad " are coupled together by the conjunction " and."   The former is in the plural form, and is, grammatically considered, a noun ; while the latter is manifestly an adjective.   This countenances the idea that the legislature intended to distinguish between railroads and horse railroads ; but we are satisfied that no such distinction was intended.   The sense clearly is to exempt railroads and horse railroads and railroad and horse railroad property and franchises.   In the amendments of 1867 and 1868 the plural form is dropped, and the word railroad is used in the same connection as an adjective.

It cannot be denied that the language used, both in the taxing and in the exempting clause, is broad enough to embrace all the property which a railroad company may own. If, under similar circumstances, the same language should be used in respect to an individual, we should not hesitate to say that the legislature intended that the direct tax should reach all his property without exception, and that the same property, thus taxed, should be exempt from local taxation. We cannot safely adopt a different rule of interpretation in respect to a railroad corporation, provided the legislative intent is equally clear. Let us examine carefully the language. The valuation fixes the "basis or measure of value of such railroad and horse railroad, their rights, franchises and property within this state, for purposes of taxation." Language more broad and comprehensive, even if designed to include everything, could not, without unnecessary and unusual particularity, have been used. The market value of all the stock represents, and was intended to represent, all the property which the railroad company owns, wherever situated, and for whatever purpose used. All such property therefore is necessarily a constituent element of the market value, and as such is taxed. No one will doubt that. The next sentence is "and this sum or tax shall take the place and be in lieu of all other taxes on railroads and horse railroad property and franchises." Here, it will be observed, the phraseology is different. If this clause stood alone there would be some ground for holding that it intended only property which was used for railroad purposes. But to ascertain its true meaning we must consider it in connection with the preceding clause. Both, relating as they do to the same subject matter, and in some measure qualifying each other, must be taken together. When so considered the difference in expression may and should be accounted for upon the supposition that the draughtsman intended to avoid a repetition of the same language, rather than to make a difference in the property described. If such difference had been intended, it is strange indeed that it was not expressed in clear and unmistakable language, as it was in other sections

of the same statute, to which reference will be made hereafter. Nothing seems clearer to us than that the legislature intended that immunity from local taxation should extend to and embrace all the property which was subject to the direct tax imposed. Any other construction subjects a portion of the property to double taxation, a construction always to be avoided if practicable, and never to be adopted except to give effect to the manifest intention of the legislature.

There are other considerations which, although not perhaps very important, yet nevertheless seem to strengthen this view of the case. The tax imposed upon the railroad company is a searching one  Nothing escapes its grasp. The market value of the stock includes not only all its property, but also all its rights and franchises, including all its advantages and facilities for earning money. To that value is added the amount of its funded and floating debt, with no deduction except the amount of cash on hand. On the other hand we can not shut our eyes to the fact—and presumptively the legislature did not—that real estate pretty uniformly goes into the tax list at much less than its real value. The same is true to a considerable extent of personal property, while a large amount of personal property escapes taxation altogether. No man's faculty is taxed, directly or indirectly, and deductions are allowed on account of indebtedness. We think therefore it is safe to assume that taxation upon railroad property is considerably above the average rate of taxation throughout the state. We do not complain of this as unjust, but surely courts should not be eager to adopt a construction which will increase, rather than diminish, the inequality of taxation.

We propose now to compare this section of the statute with other sections of the same act. Such comparisons are not only allowable, but oftentimes afford evidence of a high character as to the real meaning of the legislature. For this purpose we take the act as originally passed in 1864. It is substantially the same as in the revision of 1866.

The first section imposes a tax upon savings banks, and

similar institutions, of a sum equal to three-fourths of one per cent. of the total amount of deposits and stock; said tax "to be in lieu of all other taxes upon said institutions and the deposits therein. Provided however that this act shall not be so construed as to exempt from taxation any real estate held by any savings bank, &c., over and above what may be required and used by such institution for the transaction of its appropriate business."

The fifth section imposes a tax upon corporations, other than those specially mentioned in this act, of one-fourth of one per cent. of the market value of all the stock of such corporation, and adds, " but nothing herein contained shall be construed as exempting the stock in any of said corporations, owned or held by persons residing within this state, from taxation in the manner now by law provided."

Similar provisions are contained in the sections taxing insurance and express companies; while those taxing telegraph and railroad companies contain no such provision. Thus it is apparent not only that this matter was in the minds of the law-makers, but that their attention was specially called to it. Four out of six sections contain exceptions to the exempting clause. Two, including the one under consideration, do not. The omission was not accidental; it was manifestly intentional, and for a purpose. We are asked to supply the omission. We cannot do so except by a species of judicial legislation—a responsibility we should be slow to assume. The omission is highly significant. It is not only inconsistent, but wholly irreconcilable with the idea that the legislature intended to limit the operation of the exempting clause when no such limitation is expressed.

But this opinion would be incomplete without a reference to the pre-existing state of the law, and to subsequent legislation.

Section 23, page 712, Revised Statutes of 1866, requires the real estate of any corporation, over and above what may be required for the transaction of its appropriate business, to be set in the list of such corporation in the town where it is

situated; and makes it liable to taxation to the same extent as if owned by an individual. This section is urged upon our consideration as justifying the tax in question. But it will, not be pretended that property specially exempted by subsequent legislation is now taxable under this section. Our interpretation of the act of 1864 shows that the property in question is so exempt. If we are right, this section has no application to it.

The act of 1862, page 50 of the Revised Statutes, required a tax of railroad companies of three-fourths of one per cent. of the value of the stock, which took the place of all other taxes on railroad *stock*. The effect of that law was to withdraw from local taxation all railroad stocks; but all real estate owned by such companies, not used in their appropriate business, was liable to taxation as before. In that act the exemption was limited in terms to the stock. In 1864 the basis of taxation was enlarged by adding to the stock the amount of the funded and floating debt; at the same time the language of the exempting clause was changed so as to exempt railroad property and franchises. In 1865 the rate of taxation was increased to one per cent., and the companies were allowed to deduct from the valuation the amount of cash on hand.

So the law stood until 1867, when it was amended so as to exempt from local taxation bonds and other evidences of debt against railroad companies in the hands of creditors. In 1868, (page 185 of the Acts of that year), it was expressly provided that the exemption should "not apply to any railroad or horse railroad property not used for railroad purposes; provided, that all real estate owned by railroad and horse railroad companies, not used for railroad purposes, located in this state, may be deducted from the market value of the stock of such companies in their returns to the comptroller of this state." In 1871 it was further amended so that the companies were permitted to deduct from the amount of taxes payable to the state the amount paid in the several towns on property not used for railroad purposes. This is equitable and just. It gives the town the taxes

Osborn *v.* N. York & N. Haven R. R. Co.

derived from such property, and at the same time avoids double taxation.

We have been thus particular to refer to all the legislation on this subject, which is in harmony with and tends to confirm and strengthen the views above expressed. Indeed much of it is based upon the assumption that those views are correct.

Many decisions in other states have been referred to, and it is strongly insisted that they should induce us to come to a different result. We have carefully examined those decisions, and are satisfied that they are not inconsistent with the conclusion to which we have come in the present case. Those decisions, like this, turn upon the construction to be given to the several statutes under which they respectively arise. Some of them, like the cases in Massachusetts and Vermont, seem to exempt from all taxation. It is certainly reasonable that such statutes should be strictly construed. Others, like the cases in New Jersey, are under statutes which impose upon the corporations a *per centum* tax, and exempt them from further taxation. In all the cases the language of the exempting clause is such as clearly to import an intention to exempt only corporate property. In our own statute the language and the context seem to imply a more comprehensive meaning.

For these reasons a majority of the court are of the opinion that judgment should be rendered for the defendants.

In this opinion FOSTER and PHELPS, Js., concurred. SEYMOUR, C. J., and PARK, J., dissented.