[S. F. No. 6159.    Department One.—October 1, 1913.]

## CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation), Appellant, v. THE PACIFIC TELEPHONE AND TELEGRAPH COMPANY (a Corporation), Respondent.

TAXATION—CONSTITUTIONAL AMENDMENT OF 1910—TELEPHONE COMPANIES—TAXES ON OPERATIVE PROPERTY—MUNICIPALITY CANNOT EXACT LICENSE ON BUSINESS OF TELEPHONE COMPANIES.—Section 14 of article XIII of the state constitution, adopted at the election of November 8, 1910, providing that certain classes of corporations, including telephone companies, shall pay as taxes upon their operative property sums equal to specified percentages of their gross receipts, and that such taxes shall be exclusively for state purposes and "shall be in lieu of all other taxes and licenses, state, county and municipal, upon the property above enumerated of such companies . . .; provided, that nothing herein shall be construed to release any such company from the payment of any amount agreed to be paid or required by law to be paid for any special privilege or franchise granted by any of the municipal authorities of this state," has the effect of exempting a telephone company from liability for

a license imposed by a pre-existing municipal ordinance, for purposes of revenue only, upon persons or corporations engaged in the business of supplying telephone service to or for the inhabitants of the municipality.

ID.—COMPANIES NEED NOT PAY LICENSES FOR FIRST TWO QUARTERS OF YEAR 1911.—That amendment of the constitution, being by its own terms declared to be self-executing, became a part of the organic law of the state on the day of its adoption. The taxes therein provided to be paid by such corporations, of a percentage of their gross receipts, while not payable until July of each year, become a lien in the preceding March, and are based upon their gross receipts for the preceding year from January first to December thirty-first. The effect of the amendment therefore is to exempt such corporations from liability for the payment of such license charges imposed by a municipal ordinance for the first two quarters of the year 1911.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Percy V. Long, City Attorney, and Jesse H. Steinhart, Assistant City Attorney, for Appellant.

E. S. Pillsbury, Alfred Sutro, and Pillsbury, Madison & Sutro, for Respondent.

SLOSS, J.—This is an appeal by plaintiff from a judgment entered in favor of defendant pursuant to an order sustaining its demurrer to the complaint.

The action was brought to recover a license fee or tax upon defendant's business as a telephone company.   In May, 1903, the board of supervisors of the city and county of San Francisco enacted an ordinance providing, in section 1, that "every person, firm or corporation engaged in the business of supplying telephone service to or for the inhabitants of this city and county shall pay a license as follows:

"First—Those whose gross receipts amount to five hundred thousand (500,000) dollars or more per quarter shall constitute the first class and shall pay a license of two hundred and fifty-one (251) dollars per quarter." By other subdivisions, companies doing a smaller business were graded into other classes and smaller licenses fixed.   Each of the two counts of

the complaint alleges that the defendant, at all times material to the case, was engaged in supplying telephone service to the inhabitants of the city and county, and that its gross receipts were in excess of five hundred thousand dollars per quarter. The first count alleges the nonpayment of the license for the quarter commencing January 1, 1911, and the second makes a like averment regarding the quarter beginning April 1, 1911.

The question for decision is whether the respondent was exempted from liability for the license charge by the provisions of section 14 of article XIII of the constitution of this state. The section in question was proposed to the electors by legislative resolution adopted March 19, 1909 (Stats. 1909, p. 1332), and was ratified at the election of November 8, 1910. Its terms, so far as they are material to the present discussion, are as follows:

"Taxes levied, assessed and collected as hereinafter provided upon railroads . . . ; telephone companies, . . . and taxes upon all franchises of every kind and nature, shall be entirely and exclusively for state purposes, and shall be levied, assessed and collected in the manner hereinafter provided. The word 'companies' as used in this section shall include persons, partnerships, joint stock associations, companies and corporations.

"(a) All railroad companies . . . ; all telegraph and telephone companies; and all companies engaged in the transmission or sale of gas or electricity shall annually pay to the state a tax upon their franchises, roadways, roadbeds, rails, rolling stock, poles, wires, pipes, canals, conduits, rights of way and other property or any part thereof used exclusively in the operation of their business in this state, computed as follows: Said tax shall be equal to the percentages hereinafter fixed upon the gross receipts from operation of such companies, and each thereof within this state. . . .

"The percentages above mentioned shall be as follows: On all railroad companies, including street railways, four per cent; . . . ; on all telegraph and telephone companies, three and one-half per cent; . . . Such taxes shall be in lieu of all other taxes and licenses, state, county and municipal, upon the property above enumerated of such companies except as otherwise in this section provided; provided, that nothing herein shall be construed to release any such company from

the payment of any amount agreed to be paid or required by law to be paid for any special privilege or franchise granted by any of the municipal authorities of this state.''

The appellant's contention, briefly stated, is that the con· stitutional. provision relieves the companies named from no burden except that of taxes *upon the property* theretofore enumerated, and that the charge imposed by the ordinance is a business or occupation tax, and not a tax upon property at all, and therefore not covered by the so-called exemption. The respondent, on the other hand, claims that under a fair reading of the constitutional amendment, the liability of a telephone company to pay a percentage of its gross receipts was designed to exclude the power of the state, or of any county or municipality, to exact from it any further revenue (except as stated in the proviso above quoted) whether by way of a direct tax upon its property or in the guise of a license fee upon its business.

The constitutional amendment worked a radical change in the system of taxation in this state. Broadly speaking, the purpose of the. change, as is well known, was to divide the subjects of state and local taxation by imposing upon persons and corporations engaged in certain callings—those of public service corporations, insurance companies, banks and trust companies—the obligation to pay certain taxes to be applied exclusively to state purposes. At the same time, the persons engaged and the property employed in these callings were, to a greater or less degree, to be free from the burden of local taxation. The title of the resolution proposing the amend· ment to the electors defined such amendment as one ''provid· ing for the separation of state and local taxation, providing for the taxation of public service and other corporations . . .'' The preamble of the resolution recited that ''it is deemed desirable to separate the sources of revenue for state purposes from the sources of revenue for county and munici- pal purposes.'' In order to carry out this avowed purpose, the amendment was so framed as to impose upon the various persons and corporations described in it taxes measured by given percentages of gross receipts, in the case of railroads, car companies, express, telephone and telegraph companies, gas and electric companies; of gross premiums, in the case of insurance companies; of the value of shares of stock, in the

case of banks. In each instance the taxes so imposed were declared to be in lieu of all other taxes and licenses, state, county, and municipal, upon the property of the corporation in question, subject to certain exceptions, varying in the cases of the different callings. The amendment also provided that taxes on franchises of all kinds should be exclusively for the benefit of the state.

Under the old system, the property and franchises of the corporations above referred to were taxed for both state and local purposes. The amendment creates a new mode of taxing such property and franchises, and appropriates the revenue so raised to state purposes solely. The new method, by which taxes are collected exclusively for the state, is substituted for the former system, under which the same subjects were taxed for both state and local purposes. The percentages enumerated in the amendment are declared to be "in lieu of all other taxes," etc., and such percentages were, doubtless, fixed at higher rates than would have been adopted in the absence of a restriction on other taxation. These considerations are of weight in determining the rule of interpretation by which the provision regarding freedom from other taxation is to be read. The appellant, relying upon the well-settled rule that exemptions from taxation are to be strictly construed (2 Lewis's Sutherland Statutory Constitution, sec. 539), argues that every doubt concerning the meaning of the provision in question must be resolved against the defendant. But we think the amendment does not grant any exemption, within the meaning of this rule. As we have pointed out, it provides a specific mode of taxation, in substitution of certain other modes. In *Merrill Ry. & Lighting Co.* v. *City of Merrill,* 119 Wis. 249, [96 N. W. 686], the court, after recognizing the doctrine of strict construction of exemptions, goes on to say: "On the other hand, it is equally well settled that, where the statute in terms exempting property from general taxation is only a part of a general statutory scheme imposing a license or other impost in lieu of general taxation, the rule of strict construction has no application, but on the contrary, such a statute is to be construed liberally in favor of the person required to pay taxes in the substituted license form." To the same effect are the cases of *Milwaukee etc. Ry. Co.* v. *Board of Supervisors,* 29 Wis. 116; *Milwaukee etc.*

*Ry. Co.* v. *Milwaukee,* 34 Wis. 271; *Milwaukee E. R. & L. Co. v. Milwaukee,* 95 Wis. 42, [60 Am. St. Rep. 81, 3 L. R. A. 45, 69 N. W. 794], and *Duluth etc. Ry. Co.* v. *Douglas County,* 103 Wis. 75, 88, [79 N. W. 34]. (See, also, *Osborn* v. *New York & N. H. R. Co.,* 40 Conn. 491; *Neary* v. *Philadelphia etc. Ry. Co.,* 7 Houst. (Del.) 419, 9 Atl. 405, 414, 415; *Jersey City G. Co.* v. *Jersey City,* 46 N. J. L. 195, 196; Black on Interpretation of Laws, sec. 143.) The foregoing quotation states the rule of construction in somewhat broader terms than we find it necessary to adopt here. Whether, in a case like the one before us, the construction should be liberal, *in favor* of the taxpayer, is questionable. But certainly the authorities, and good reasons as well, support the view that in such cases the meaning of the statutory or constitutional provision is to be ascertained by a fair consideration of all its terms, without any definite leaning to the side of the taxing power.

Giving, then, a fair and reasonable interpretation to the constitutional provision, we think the charge imposed by the ordinance of the city and county was within the class of taxes and licenses from the imposition of which the respondent was relieved by the amendment. It is true that a license-tax upon an occupation or business is not a tax upon property, even though, by constitutional or statutory definition, franchises are included in the meaning of the word "property." This is clearly decided in *City of Los Angeles* v. *Los Angeles Independent Gas Co.,* 152 Cal. 765, [93 Pac. 1006]. If the amendment did no more than to declare that the percentage required to be paid by telephone companies should be in lieu of all other taxes upon the property of such companies, it would seem to be a necessary conclusion that the power to impose an occupation tax was not excluded. But there are other words in the provision, and all of the language must, under familiar principles of construction, be considered and given its fair meaning and effect. The percentage imposed is declared to be in lieu, not merely of other taxes, but "of all other taxes *and licenses* . . . upon the property." The word "license," properly speaking, means a grant of permission or authority to do a particular thing or carry on a particular business. (*City of Sonora* v. *Curlin,* 137 Cal. 583, [70

Pac. 674] ; Words and Phrases, p. 4137.)    In the clause under
discussion, the term is evidently used to designate the fee or
charge imposed upon the exercise of the right.    While such
fee or charge is often spoken of as a tax, it is not in any sense
a tax upon property.    (See *City of Los Angeles* v. *Los
Angeles Independent Gas Co.*, 152 Cal. 765, [93 Pac. 1006].)
In order to construe the clause as relieving from taxes or
charges upon property alone, we should, therefore, be re-
quired to deny meaning and significance to the word "li-
censes."    The right of the telephone company to carry on
the business of supplying telephone service is a franchise.
Franchises are included in the enumeration of classes of
property which, by the terms of the amendment, are to be
taxed for state purposes only.    To the extent that the con-
stitutional amendment imposes a charge upon franchises of
telephone companies, such charge does not differ in sub-
stance from the license fee exacted by the ordinance.    Each
enactment requires the payment of an amount, measured by
gross receipts and not by any assessment of value, for the
exercise of the franchise.    The difference is in reality one of
form, the constitution treating the tax as one upon property,
while the ordinance designates it as a license.    But, by the
constitution, local licenses are excluded as well as local taxes.
Every word in the clause under discussion can be given a rea-
sonable and legitimate effect by reading the term "licenses"
as including revenue charges of any character upon the exer-
cise of the franchises which are declared to be taxable for
state purposes only.    In this way, the phrase "upon the prop-
erty above enumerated" is made fully effective as qualify-
ing both "taxes" and "licenses" preceding it, while no word
is either ignored or distorted from its fair meaning.

This interpretation is fortified by the proviso which is a
part of the clause under discussion.    The amendment, after
declaring that the taxes imposed on the companies shall be
in lieu of all other taxes and licenses, etc., goes on as follows:
"provided, that nothing herein shall be construed to release
any such company from the payment of any amount agreed
to be paid or required by law to be paid for any special privi-
lege or franchise granted by the municipal authorities of this
state."    The charge imposed by the city and county ordi-

nance before us is not of the character described in this proviso. It is not a payment for any special privilege granted by the municipal authorities. The right to do a telephone business, upon which the tax is imposed, was not granted to the respondent by the municipality.

But if the appellant's construction of the amendment be correct, the obligation to make payments of the kind described in the proviso would, even without the proviso, have rested upon the companies. Such payments are certainly not taxes upon property but are akin to the licenses of which we have been speaking. The fact, however, that it was thought necessary to embody a proviso saving such payments from the effect of preceding language affords persuasive indication that, in the view of the framers of the amendment, such language, by itself, would have covered the excepted payments. This is the well-settled rule for construing provisos and exceptions. "Where there is a prohibition, grant or regulation in general words, and a saving of particular things, there is a strong implication that what is excepted would have been within the purview if it had not been excepted; and thus the purview may be made more comprehensive than it would otherwise have been." (2 Lewis's Sutherland Statutory Constitution, sec. 351; *Wayman* v. *Southard,* 10 Wheat. 30, [6 L. Ed. 253]; *Thaw* v. *Ritchie,* 136 U. S. 519, 541, 542, [34 L. Ed. 531, 10 Sup. Ct. Rep. 1037].) By specially excepting payments in the nature of licenses from the effect of the amendment, the framers evidenced their intention to put licenses other than those covered by the proviso within the operation of the language preceding the proviso.

For these reasons we agree with the conclusion of the learned trial judge that the taxes imposed by the amendment supersede, not only other taxes upon property, but also license fees like those exacted by the ordinance of the city and county. This result, it seems to us, not only accords with the language of the part of the amendment defining the tax, but is in harmony with the apparent purpose and scope of the new system of taxation created by the amendment.

It will be observed that the license-tax here sought to be collected is clearly one for revenue only. (*City of Sonora* v. *Curtin,* 137 Cal. 583, [70 Pac. 674]; *Santa Monica* v. *Guidi-*

*ner,* 137 Cal. 658, [70 Pac. 732] ; *Ex parte Braun,* 141 Cal. 204, [74 Pac. 780].) Whether the same reasoning would apply to a charge imposed under the police power for the purposes of regulation is a question that is not presented by the case before us, and upon it we express no opinion.

The appellant makes the further point that, if the amendment be given the construction contended for by the telephone company, yet it did not operate to relieve the company from the municipal license charge for the period here involved— the first two quarters of 1911—for the reason that the new substituted tax did not become payable until the first Monday in July, 1911. The amendment, which is by its own terms declared to be self-executing, was adopted at an election held on November 8, 1910, and became a part of the organic law on that date. (Const., art. XVIII, sec. 1.) Subdivision (f) of section 14, added to article XIII by the amendment, provides that ''the taxes herein provided for shall become a lien on the first Monday in March of each year after the adoption of this section and shall become due and payable on the first Monday in July thereafter. The gross receipts and gross premiums herein mentioned shall be computed for the thirty-first day of December prior to the levy of such taxes and the value of any property mentioned herein shall be fixed as of the first Monday in March. Nothing herein contained shall affect any tax levied or assessed prior to the adoption of this section . . . '' It is claimed that the provision that taxes imposed by the amendment should be ''in lieu of all other taxes'' did not become operative until the date when the new tax was payable. The amendment does not so provide. It is not declared that the tax, ''when due and payable,'' shall be in lieu of other taxes, and to so limit the effect of the provision would require the court to read into the enactment words which were not inserted by the framers of the amendment. The percentage of gross receipts, while not payable until July, becomes a lien in March, and is based on the year from January first to December thirty-first. In view of these considerations, and particularly of the fact that taxes ''already levied or assessed'' are expressly excepted, we see no ground for holding that the provision that the tax should be in lieu of other taxes did not become effective at

once with respect to all taxes not excepted.    (See *State* v. *Minton*, 23 N. J. L. 529.)

The judgment is affirmed.

Shaw, J., and Angellotti, J., concurred.

Hearing in Bank denied.