[S. F. No. 6602.   In Bank.—September 21, 1916.]

BANK OF CALIFORNIA, NATIONAL ASSOCIATION (a Corporation), Respondent, v. E. D. ROBERTS, as Treasurer of the State of California, Appellant.

TAXATION—VALUATION OF SHARES OF STOCK OF BANK—STOCK HELD BY BANK IN OTHER BANKS — CONSTITUTIONAL LAW. — The value for purposes of assessment and taxation of the shares of the capital stock of a bank, whether state or national, in accordance with the provisions of subdivision (c) of section 14 of article XIII of the constitution as amended in November, 1910, is to be computed by including, in addition to the amount paid in on the stock, every item of property embraced within accumulated surplus and undivided profits, with the single exception of real estate taxed for county purposes. This necessitates the inclusion of the value of the shares of stock of other banking corporations whether state or national, owned by the bank, notwithstanding such other shares are subject to a separate assessment and taxation.

ID.—PAYMENT OF TAX IS FOR BENEFIT OF STOCKHOLDERS.—The bank in paying the tax does so only on behalf of its stockholders, and in separately assessing the stock in the other banks owned by it, the tax is imposed not upon those banks, but upon the holders of the shares, whoever they may be.

ID. — DOUBLE TAXATION — DIFFERENT PROPERTY INTERESTS SEPARATELY OWNED.—In the absence of express constitutional provision, there is no necessary or inherent objection to taxing the same property twice to different persons so long, at least, as there is some kind of estate or right, in both persons taxed, to the taxed property. Such taxation does not contravene any provision of the federal constitution.

ID.—DOUBLE TAXATION NOT PROHIBITED BY STATE CONSTITUTION.—The state constitution, since the amendments of 1910 to sections 1 and 14 of article XIII thereof, does not prohibit such double taxation.

ID. — NATIONAL BANKS — TAXATION OF STOCK IN OTHER BANKS. — Section 5219 of the Revised Statutes of the United States authorizes the taxation of shares owned by a national bank in another bank, whether state or national.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and Raymond Benjamin, Chief Deputy Attorney-General, for Appellant.

Pillsbury, Madison & Sutro, A. E. Roth, and A. D. Plaw, for Respondent.

SLOSS, J.—Plaintiff brought this action to recover taxes paid under protest, and recovered judgment for $7,479.68. The defendant appeals from the judgment, which was rendered on the pleadings.

The plaintiff is a banking corporation organized under the National Banking Act of the United States. It has a capital stock of eighty-five thousand shares, of the par value of one hundred dollars each. In the year 1911, the state board of equalization assessed these eighty-five thousand shares at the sum of $15,531,588 and assessed and levied a tax of one per centum thereon.

During the year 1911, the plaintiff was the owner of 2,501 shares of the capital stock of the National Bank of D. O. Mills & Co., likewise a corporation organized under said National Bank Act. It was also the owner of 1,049 shares of the capital stock of the Mission Bank, a banking corporation organized under the laws of the state of California. The board of equalization, in assessing the eighty-five thousand shares of the capital stock of the plaintiff, included in its valuation the value of the 2,501 shares of stock in the National Bank of D. O. Mills & Co. and the value of the 1,049 shares of stock in the Mission Bank.

The shares of stock of the National Bank of D. O. Mills & Co. and of the Mission Bank were assessed in like manner by the state board of equalization, and the tax was levied upon all of the shares of these banks, including those owned by the plaintiff.

The plaintiff claimed that this course of procedure resulted in a double taxation of the shares of stock in the two banks owned by it, and applied to the board of equalization to exclude from the assessment of its shares the value of the said shares of the two other banks. This application having been denied, the plaintiff paid its tax under protest. The tax on the 2,501 shares of the stock of the National Bank of D. O. Mills & Co. amounted to $6,278.67. The tax upon the 1,049 shares of the Mission Bank came to $1,201.01. These sums

having been . paid under protest, the plaintiff brought this action to recover them.

The taxes here involved were levied in accordance with the provisions added to the constitution by the amendments adopted in November, 1910. (Art. XIII, sec. 14.) As we have heretofore said, these amendments "worked a radical change in the system of taxation in this state. Broadly speaking, the purpose of the change, as is well known, was to divide the subjects of state and local taxation by imposing upon persons and corporations engaged in certain callings—those of public service corporations, insurance companies, banks and trust companies—the obligation to pay certain taxes to be applied exclusively to state purposes. At the same time, the persons engaged and the property employed in these callings were, to a greater or less degree, to be free from the burden. of local taxation. . . . Under the old system the property and franchises of the corporations above referred to were taxed for both state and local purposes. The amendment creates a new mode of taxing such property and franchises, and appropriates the revenue so raised to state purposes solely." (*San Francisco* v. *Pacific Tel. & Tel. Co.*, 166 Cal. 244, 247, [135 Pac. 971].) Subdivision (c) of section 14, thus added to the constitution, provides in detail for the method of assessing and taxing banks. It is provided that the shares of the capital stock of all banks incorporated under the laws of any state or of the United States and located in this state shall be assessed and taxed to the owners or holders thereof by the state board of equalization, and that there shall be levied and assessed upon such shares an annual tax, payable to the state, of one per centum upon the value thereof. The value of each share of stock is to be taken to be the amount paid in thereon, together with its *pro rata* of the accumulated surplus and undivided profits. In reaching this result, deduction is to be made of the value of real estate owned by the bank and taxed for county purposes. It is provided that the banks shall pay the tax to the state on behalf of the stockholders and shall have a lien upon the shares and any dividends to secure the. amount so paid.

This subdivision contains a detailed and comprehensive scheme for the valuation of the shares of stock of banks. It declares that the value shall be taken to be the amount paid in on the stock, together with the *pro rata* of the accumulated

surplus and undivided profits.   Provision is made for the deduction of one item of property, to wit, real estate taxed for county purposes.   No other deduction is directed to be made, and it seems clear, under the most familiar rules of interpretation, that none other was contemplated.   So far as the face of the constitutional provision goes, the value of the shares is to be computed by including, in addition to the amount paid in on the stock, every item of property embraced within accumulated surplus and undivided profits, with the single exception of real estate taxed for county purposes.   The board of equalization acted, therefore, in strict compliance with the constitutional method when it fixed the value of the shares of stock in the plaintiff bank by taking the amount paid in, together with the *pro rata* of the accumulated surplus and undivided profits, subject to a deduction of the value of the designated real estate alone.   The shares of stock in other corporations, whether engaged in banking or other business, were necessarily included in determining the amount on which this *pro rata* was to be reckoned.   Similarly, in fixing the value of the shares of stock in the National Bank of D. O. Mills & Co. and in the Mission Bank, the board was required to follow the same course.   Its ascertainment of the value of the shares of stock in those banks, by whomever owned or held, was reached by adding to the amount paid in the *pro rata* of the accumulated surplus and undivided profits of the respective banks after making the deduction of real estate.

The respondent claims that, by a long line of decisions beginning with *Burke* v. *Badlam,* 57 Cal. 594, this court has established the doctrine that the sum total of the value of the shares of stock in a corporation is the equivalent of the value of all of the property of every kind, including franchises, owned by the corporation.   (*Spring Valley Water Works* v. *Schottler,* 62 Cal. 69, 115 et seq.; *San Francisco* v. *Anderson,* 103 Cal. 69, [42 Am. St. Rep. 98, 36 Pac. 1034]; *People* v. *National Bank of D. O. Mills & Co.,* 123 Cal. 53, 60, [69 Am. St. Rep. 32, 45 L. R. A. 747, 55 Pac. 685]; *Bank of California* v. *San Francisco,* 142 Cal. 276, [100 Am. St. Rep. 130, 64 L. R. A. 918, 75 Pac. 832]; *Crocker* v. *Scott,* 149 Cal. 575, [87 Pac. 102].)   It was upon this theory that the court held that section 3608 of the Political Code, prohibiting any assessment of the shares of stock of state corporations, was not in conflict with section 1, article XIII, of the constitution, which declared

that all property should be taxed in proportion to its value, and defined the word "property" as including, among other things, "stocks." (*Burke* v. *Badlam*, 57 Cal. 594.) The cases have for their foundation the proposition that an assessment and taxation of every item and element of property owned by the corporation and giving value to its stock is, in effect, an assessment and taxation of the stock itself. And, basing its argument upon this proposition, the plaintiff bank contends that when the shares of stock issued by it are assessed and taxed upon a valuation which includes the value of shares of stock owned by it in other banks, and those shares are again assessed upon a separate ascertainment of their value, the state is undertaking to tax the same property twice. On the other hand, the appellant argues that there is not, in reality, any question of double taxation here. In assessing the shares of stock in the plaintiff, a tax is imposed upon the owners and holders of those shares. The plaintiff pays the tax only on behalf of the holders. In assessing the shares of stock in the National Bank of D. O. Mills & Co. and the Mission Bank, the tax is imposed not upon those banks, but upon the holders of the shares, whoever they may be. The plaintiff as one of such holders is, so the appellant contends, no more entitled to exemption from the tax than is any other shareholder. The supreme court of the United States has consistently held that a tax upon the shares is not the equivalent of a tax upon the capital of the bank (see *Owensboro N. B.* v. *Owensboro*, 173 U. S. 677, [ 43 L. Ed. 850, 19 Sup. Ct. Rep. 537], and cases cited), and that the state may properly impose a tax upon the full value of the shares of stock in a national bank, regardless of the fact that the property of the bank, which gives those shares their value, may be in part composed of bonds of the United States or other property exempt from taxation. (*Van Allen* v. *Assessors*, 3 Wall. 573, [18 L. Ed. 229] ; *People* v. *Tax Commrs.*, 4 Wall. 244, [18 L. Ed. 344].)

We need not stop to inquire whether these decisions proceed upon a theory in conflict with the views announced by this court in *Burke* v. *Badlam*, and subsequent decisions to like effect. Let it be assumed that the assessment here complained of did result in double taxation. In the absence of express constitutional provision, there is, however, no necessary or inherent objection to taxing the same property twice

to different persons "so long, at least, as there is some kind of estate or right, in both persons taxed, to the taxed property." (Gray on Limitation of Taxing Power, secs. 1361, 1363; Cooley on Taxation, 3d ed., p. 389 et seq.) Such taxation does not contravene any provision of the federal constitution. "It is no doubt within the power of a state, when not restrained by constitutional limitations, to assess taxes upon them" (i. e., property of the corporation and shares of stock in the hands of the individual stockholders), "in a way to subject the corporation or the stockholders to double taxation." (*Tennessee* v. *Whitworth*, 117 U. S. 129, 136, 137, [29 L. Ed. 830, 6 Sup. Ct. Rep. 645].)

Does the constitution of California prohibit such double taxation as may be involved in the assessment here complained of? No doubt our constitution, as it stood prior to the amendments of 1910, did contain such prohibition. Section 1 of article XIII, as it originally read, provided that "All property in the state, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law." This is the language which was held, in the cases above cited, to forbid double taxation. "All property" is not taxed in proportion to its value if some of it is taxed once and some of it more than once upon the ascertained value. (*Burke* v. *Badlam*, 57 Cal. 594.) But when the new system of taxing certain corporations for state purposes was embodied in the constitution, section 1 was also amended. That section was made to read as follows: "All property in the state *except as otherwise in this constitution provided,* not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law, *or as hereinafter provided.*" The change consisted in the addition of the italicized words. Here is an express declaration that the general rule requiring property to be taxed in proportion to its value shall be subject to the qualification that such proportionate method of taxation shall not apply where the constitution makes other provision. It has, as we have seen, made other provision for the assessment of bank property. The respondent claims that the words "except as otherwise in this constitution provided" qualify merely the subject of the sentence, to wit, "all property in the state." In other words, the contention is that this qualifying clause was meant

to cover only the exemptions specifically provided for in section 1 and subsequent sections of article XIII. This is a strained interpretation of the language. The amendments to section 1 and to section 14 were proposed and adopted at the same time, and there can be no doubt that the changes formed parts of a single comprehensive scheme. The plan of section 14 is in various respects inconsistent with the idea that the property therein described shall be assessed in proportion to its value. The taxes levied, while described as taxes upon the property of corporations, are not based upon any mode of ascertaining either the proportionate or the absolute value of such property. Thus, in subdivision a, railroad, telegraph, telephone, gas or electric and certain other companies are subjected to a tax of a certain percentage of their gross receipts from operations within this state. Subdivision b imposes upon insurance companies a tax of one and one-half per cent upon the amount of the gross premiums received. Such taxes cannot upon any fair construction be said to comply with a requirement that all property shall be taxed in proportion to its value. Surely it was not believed, when section 14 was adopted, that the method of taxation therein provided for should be limited or controlled by any general provision such as that theretofore contained in section 1. The amendment of section 1 was designed to avoid any possible conflict with section 14. Even if, however, there should be any opposition between the general terms of section 1 and the provisions of section 14, the latter, as the more specific and particular enactment, would prevail.

The respondent makes a further point. Since national banks constitute an agency of the United States, created for the carrying out of governmental purposes, property of such banks and shares of stock in the same cannot be taxed by a state except in so far as such taxation is permitted by act of Congress. The requisite permission is granted by section 5219 of the Revised Statutes. That section authorizes the several states to include all the shares of national banks in the valuation and assessment of personal property of the owner or holder of such shares, subject to the restrictions (1) that the tax shall not be at a greater rate than is assessed upon other moneyed capital, and (2) that shares owned by nonresidents of the state shall be taxed in the city or town

where the bank is located. The claim is made that this statute does not authorize the assessment of the personal property of national banks to the banks, and that the state is not, therefore, authorized to assess to the plaintiff, through the Mission Bank, the plaintiff's shares in that bank. In *Bank of Redemption* v. *Boston,* 125 U. S. 60, [31 L. Ed. 689, 8 Sup. Ct. Rep. 772], it was decided by the supreme court of the United States that section 5219 of the Revised Statutes does not prevent the taxation of the shares of a national bank in the hands of another national bank. No different rule could be applied to the taxation of shares in a state bank owned by a national bank without violating the provision of section 5219 requiring "other moneyed capital" to be assessed at a rate equal to that imposed upon shares in national banks. If the section authorizes the taxation of shares owned by a national bank in another national bank, it must necessarily contemplate a like taxation of shares in state banks similarly owned.

The judgment is reversed.

Shaw, J., Henshaw, J., Melvin, J., Lorigan, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.