[Civ. No. 48162. First Dist., Div. One. Mar. 19, 1982.]

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,
Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO, Defendant and
Respondent.

COUNSEL

Prentiss Willson, Jr., Nance F. Becker and Morrison & Foerster for Plaintiff and Appellant.

George Agnost, City Attorney, and John J. Doherty, Deputy City Attorney, for Defendant and Respondent.

## OPINION

**NEWSOM, J.**—This is an appeal from a judgment which denied appellant's claim for a refund of ad valorem taxes in the principal amount of $100,054.25, assessed and paid under protest for the fiscal year 1973-1974 on personal property allegedly owned by it. The case was tried on stipulated facts which may be summarized as follows. Appellant (hereinafter also Mass Mutual), a mutual insurance company, holds title to the Hyatt Hotel on Union Square (hereinafter hotel) and its fixtures and personal property. Under a lease agreement with the California Hyatt Corporation (hereinafter Cal Hyatt) executed on January 4, 1973, the hotel is managed and operated by Cal Hyatt. The agreement is for a term of 21 years, and grants Cal Hyatt a leasehold estate in the fixtures and equipment used in operating the hotel.[1] Appellant retained legal title to the property; Cal Hyatt was required by the agreement to keep all of the insurable personalty in the hotel insured against loss or damage, although the risk of property loss otherwise rested with appellant. In addition, Cal Hyatt covenanted to pay any personal property taxes imposed.[2]

The lease agreement also allowed appellant to exercise certain control over the operation of the hotel and, incidentally, its fixtures and equipment; that control included approval of the budget, expenses, and some decor sales and purchases. Cal Hyatt, however, controlled the day-to-day operation of the hotel and use of the personalty.

Pursuant to the agreement, 80 percent of the net profits generated by operation of the hotel were paid to appellant and 20 percent to Cal Hyatt.

Article XIII, section 14-4/5 of the California Constitution—now article XIII, section 28—imposes a tax on the annual "gross premiums" of insurance companies, and otherwise grants insurers an "in lieu" tax exemption for all other taxes. It provides in pertinent part as follows: "(b) An annual tax is hereby imposed on each insurer doing business in this State on the base, at the rates, and subject to the deductions from the tax hereinafter specified. [¶] (c) . . . the 'basis of the annual tax' is,

---

[1] The personal property here in question has a "useful life," for depreciation purposes, of less than the 21-year term of the lease.

[2] Even though the lease agreement obligated Cal Hyatt to pay the taxes imposed, appellant did so and subsequently brought this suit.

in respect to each year, the amount of *gross premiums*, less return premiums, received in such year by such insurer upon its business done in this state, other than premiums received for reinsurance and for ocean marine insurance. . . . [¶] (f) The tax imposed on insurers by this section is in lieu of all other taxes and licenses, state, county, and municipal, upon such insurers and their property, except: [¶] (1) Taxes upon their real estate. . . ."

The trial court concluded, as had the tax assessor, that in light of the purpose and objective of article XIII, section 14-4/5, the "in lieu" tax exemption should not and did not apply to personal property owned by the insurer but used in an unrelated and independent business.

Appellant complains that such an interpretation violates the plain meaning of the provision, which states that the gross premiums tax is "in lieu of all other taxes" imposed "upon such insurers *and their property*, . . ." According to appellant, the unambiguous language of article XIII, section 14-4/5, grants an exemption based upon *ownership* of property by the insurer, without consideration of *use*. Respondent in turn argues that consideration of the objective of the law leads to the conclusion that the "in lieu" exemption applies only to property used in the business of transacting insurance.

To ascertain the meaning of article XIII, section 14-4/5, we consult pertinent interpretive guidelines.

■■ ■■■ A cardinal rule is that laws should be given a reasonable construction which comports with the apparent purpose and intent of the lawmaker.[3] (*Gerkin v. Santa Clara Valley Water Dist.* (1979) 95 Cal.App.3d 1022, 1025 [157 Cal.Rptr. 612]; *Cory v. Golden State Bank* (1979) 95 Cal.App.3d 360, 367 [157 Cal.Rptr. 538].) Language must be read in context, keeping in mind the nature and purpose of the enactment, and given an interpretation which will promote rather than defeat the objective of the drafters of the constitutional provision and the people by whose vote it was adopted. (*Mosk v. Superior Court* (1979) 25 Cal.3d 474, 495 [159 Cal.Rptr. 494, 601 P.2d 1030].) In *Flood v. Riggs* (1978) 80 Cal.App.3d 138, 152 [145 Cal.Rptr. 573], we

---

[3]While some of the cases herein cited deal with interpretation of statutes, "Rules of construction and interpretation that are applicable when considering statutes are equally applicable in interpreting constitutional provisions." (*County of Fresno v. Malmstrom* (1979) 94 Cal.App.3d 974, 979 [156 Cal.Rptr. 777].)

explained that "the words used should be accorded the ordinary and usual meaning given them among people by whose vote they were adopted."

In fact, as noted in *People* v. *Davis* (1978) 85 Cal.App.3d 916, 924 [149 Cal.Rptr. 777]: "... a persuasive and basic principle of statutory construction provides that ... intent should prevail over a literal or plain-meaning construction." And, as expressed in *English* v. *County of Alameda* (1977) 70 Cal.App.3d 226, 233-234 [138 Cal.Rptr. 634]: "... intent may be ascertained not only by considering the words used, but also taking into account other matters as well, such as the objects in view, the evils to be remedied, the legislative history, public policy and contemporaneous administrative construction."

■ No different or special interpretive principles apply to "in lieu" tax exemption laws. Our high court recently recognized in *Western States Bankcard Assn.* v. *City and County of San Francisco* (1977) 19 Cal.3d 208 [137 Cal.Rptr. 183, 561 P.2d 273], that while the usual rule of strict construction of tax exemption provisions does not apply to an "in lieu" scheme, neither is "there [a] ... discernible policy basis for a 'liberal' interpretation" of such laws. (*Id.*, at p. 216.)[4]

The parties agree that the quid pro quo for the "in lieu" tax exemption is the imposition upon insurers of a tax on "gross premiums." Instead of being taxed on net profits, as is the common commercial case, insurance companies pay a tax measured by gross premiums. (*San Francisco* v. *Pacific Tel. & Tel. Co.* (1913) 166 Cal. 244, 248 [135 P. 971].) ■ The purpose of the "in lieu" exemption granted to insurers, and other enumerated businesses, was to impose a tax obligation measured by given percentages of gross receipts—gross premiums in the case of insurance companies—the revenues from which are allocated to state, rather than local, purposes. (*Id.*, at pp. 247-248; *Camden Fire Ins. Assn.* v. *Johnson* (1941) 42 Cal.App.2d 528, 531 [109 P.2d 447].) The gross premiums tax is not a tax upon property, but a franchise or excise tax exacted for the privilege of doing insurance business in this state. (*Franklin Life Ins. Co.* v. *State Board of Equalization* (1965) 63

[4]Finally, in construing the governing statute, we also note that we are not bound by the trial court's conclusion. "Since all of the pertinent facts were stipulated and the sole question presented to the trial court was the applicability of the [provision] ... to those facts, the issue is one of law for determination by the appellate court." (*Western States Bankcard Assn.* v. *City and County of San Francisco, supra*, 19 Cal.3d 208, 213; see also *City of Los Angeles* v. *Security Systems, Inc.* (1975) 46 Cal.App.3d 950, 952-953 [120 Cal.Rptr. 600].)

Cal.2d 222, 231 [45 Cal.Rptr. 869, 404 P.2d 477]; *Western & Southern Life Ins. Co.* v. *State Bd. of Equalization* (1970) 4 Cal.App.3d 21, 33 [84 Cal.Rptr. 88]; *Edward Brown & Sons* v. *McColgan* (1942) 53 Cal. App.2d 504, 507 [128 P.2d 186].)

It thus becomes apparent that the "in lieu" tax exemption granted insurers is tied to the gross premiums tax. The more burdensome gross premiums tax is imposed, but is offset by an exemption which insulates "insurers and their property" from "all other taxes." (See *San Francisco* v. *Pacific Tel. & Tel. Co., supra*, 166 Cal. 244, 248[5]; *City of San Jose* v. *Donohue* (1975) 51 Cal.App.3d 40, 46 [123 Cal.Rptr. 804], app. dism. 423 U.S. 1069 [47 L.Ed.2d 80, 96 S.Ct. 851].)

Since the "in lieu" exemption is granted in return for imposition of a tax on gross, rather than net, receipts, and is functionally related to the tax which insurers must pay on gross premiums paid to the company for insurance benefits (*Allstate Ins. Co.* v. *State Board of Equal.* (1959) 169 Cal.App.2d 165, 168 [336 P.2d 961]), in our view it would be inappropriate to allow a tax exemption for property owned by an insurer but not used to produce taxable gross premiums. If it were otherwise, an insurer could entirely escape taxation of all revenue-producing property not used to generate "gross premiums." Under such circumstances, as in the present case, the quid pro quo for the "in lieu" exemption no longer exists; the insurer retains the privilege of doing business, and derives profits, but pays the state nothing for property owned and used in deriving a conceivably substantial source of its income. We do not think the electors intended such a result.

Plainly, if an insurance company were allowed to own an income-producing business and its fixtures and equipment while escaping taxation under the "in lieu" provision, it would be placed in an unwarranted competitive advantage over other taxed enterprises engaged in the same business. This also we think was not contemplated by the constitutional amendment.

The quid pro quo basis for the exemption disappears if, as here, the insurer pays no gross premiums tax for the privilege of receiving otherwise preferential tax treatment, and the purpose of article XIII, section

---

[5]In *San Francisco* v. *Pacific Tel. & Tel. Co., supra*, the court noted that the gross receipts taxes were "fixed at higher rates than would have been adopted in the absence of a restriction on other taxation." (166 Cal. at p. 248.)

14-4/5 is contravened where property ownership is the sole basis for granting the "in lieu" exemption.

Still, appellant urges this court to interpret section 14-4/5 in accordance with the "plain meaning" of its language, which, appellant suggests, includes no caveat regarding *use* of the insurer's property. In so arguing, appellant relies upon two cases which construed the public land tax exemption. (Cal. Const., art. XIII, § 3, subds. (a) and (b), formerly § 1.) We have considered both cases closely, and comment as follows.

In *San Francisco v. McGovern* (1915) 28 Cal.App. 491 [152 P. 980], the County of Tuolumne claimed that property purchased in that county by the City and County of San Francisco and on which was to be constructed and operated a municipal waterworks to supply water, light and power to both San Francisco City and County and other citizens were not entitled to governmental property tax exemption under former article XIII, section 1, which granted tax immunity to property "used for" certain public purposes "and such as may *belong to* the United States, this State, or to any county, city and county, or municipal corporation within this state. . . . "

The court rejected a claim that because the subject property was neither located within the boundaries of the city and county which owned the property nor used to benefit city and county residents the exemption was inapplicable. It was explained that: "The condition here seems only to be that it (the property) shall 'belong' to the United States, etc. Its location or use is not made a condition of its exemption. The word 'belong' is applied alike and with the same force and meaning to the United States, this state, and to counties and municipalities, and it seems to us was employed to denote an unqualified ownership of the property, not an ownership subject to the condition that it was to be used exclusively for governmental purposes." (*San Francisco v. McGovern, supra*, 28 Cal.App. 491, 500.)

A similar ruling was made in *Anderson-Cottonwood Irr. Dist.* v. *Klukkert* (1939) 13 Cal.2d 191 [88 P.2d 685], where it was held that property owned by an irrigation district was entitled to the public property exemption even though the property in question was "nonoperative"; that is, not in actual use for the purposes for which the irrigation district was organized. The court concluded: "There is no mention of the use to which property of a municipality is put as a condition to its

being nontaxable. The provisions of the Constitution and the statute are without condition or limitation. . . . It is the general rule that where the Constitution and laws of a state exempt from taxation all property of municipalities within the state, without reference to the use to which the property is put, it is exempt from all taxation regardless of the character of the use thereof." (*Id.*, at p. 195.)

We find neither *McGovern* nor *Anderson-Cottonwood Irr. Dist.* persuasive here. Important factors distinguish the public property tax exemption from the "in lieu" exemption at issue in the present case.

First, the language of the public property exemption therein discussed differs from that of section 14-4/5; it immunizes from taxation property "belonging to" the state. The "in lieu" exemption here at issue applies to "insurers and their property." In our view the term "belonging to" more clearly suggests taxation based upon ownership than does the phrase "insurers and their property."

Even more significant is the distinction between the objectives of the respective tax exemptions. The policy underlying the tax exemption accorded government-owned property is to secure a tax privilege for governments so that one sovereign cannot tax another. (*English v. County of Alameda* (1977) 70 Cal.App.3d 226, 238 [138 Cal.Rptr. 634]; *Church of the Holy Faith* v. *State Tax Commission* (1935) 39 N.M. 403 [48 P.2d 777, 781].) Public ownership, irrespective of use of the property, furthers this statutory goal. On the other hand, the insurer's "in lieu" exemption was obviously meant to lighten the otherwise heavy burden of the "gross premiums" tax (*San Francisco v. Pacific Tel. & Tel. Co., supra*, 166 Cal. 244, 248-249); an exemption from all other taxes, including taxes on what might be major assets used in noninsurance business activities, seems rationally no part of the constitutional tax system.

Presented with tax exemption schemes more closely analogous to that at issue here, cases from other jurisdictions have limited them to property use or activities related to the business commonly engaged in by the exemption-seeking taxpayer. For example, in *Church of the Holy Faith* v. *State Tax Commission, supra*, 48 P.2d 777, the court construed the meaning of a tax exemption granted to all church property. Distinguishing the exemption—both in terms of language and underlying purpose—from the public property exemption (*id.*, at pp. 781, 782,

784),[6] the court concluded: "We think the phrase 'church property,' as used in the section of the Constitution under consideration, means property required for use of the church." (*Id.*, at p. 784.) Similarly, in *First Nat. Bank of Santa Fe* v. *Commissioner of Rev.* (1969 App.) 80 N.M. 699 [460 P.2d 64], appeal dismissed 397 U.S. 661 [25 L.Ed.2d 643, 90 S.Ct. 1407], the court dealt with tax exemptions granted to national banks by 12 United States Code section 548. A tax was assessed on gross receipts of a taxpayer bank received for electronic data processing and accounting services rendered to other banks. The bank's claim of exemption was denied on the ground that, although not specified by the statute, the functions or services were not "reasonably related or incidental to the accomplishment of its bank functions." (*Id.*, at p. 67.)[7]

We also find California authority for an emphasis on the use made of an insurer's property in determining whether the "in lieu" exemption applies. In *Hughes* v. *Los Angeles* (1914) 168 Cal. 764 [145 P. 94], our high court ruled that insurance *agents* must receive the benefit of the insurer's exemption even though not expressly covered by the language of the provision, on the theory that insurance corporations "must act through agents . . . and . . . therefore, in a direct and immediate sense a tax upon . . . [the agents] . . . is a tax upon the corporation's rights to do business." (*Id.*, at p. 765.) In *Marsh & McLennan of Cal., Inc.* v. *City of Los Angeles* (1976) 62 Cal.App.3d 108 [132 Cal.Rptr. 796], however, the court rejected an insurance broker's contention that the "in lieu" exemption should apply equally to broker-commissions, concluding that a broker is an independent contractor rather than an agent, has no authority to bind the insurer, pays no gross premiums tax, and "enjoys attendant advantages of dealing as an independent insurance broker." (*Id.*, at p. 120.)

Implicit in these cases is a recognition of the principle that it is only the insurance-related business activities of an insurer which qualify for the "in lieu" exemption. (See also *Western States Bankcard Assn.* v. *City and County of San Francisco, supra*, 19 Cal.3d 208, 218-219.)

---

[6]The quid pro quo theory was found by the court to be the "justification for exempting property from taxation where the exemption is for the promotion of religious, educational, charitable, or similar objects, deemed beneficial to the state, . . ." (*Id.*, at p. 784.) The court noted, however, that, "the *quid pro quo* theory as supporting the exception fails as to property of a church as an entity which . . . is not used to promote the object or purposes of the church." (*Ibid.*) Such analysis is equally persuasive here.

[7]See also *Santa Fe Downs, Inc.* v. *Bureau of Revenue* (1973 App.) 85 N.M. 115 [509 P.2d 882, 884].

■ To implement the policy which underlies the constitutional provision, we conclude that an insurance company does not receive the "in lieu" exemption for property owned and used by it in the operation of an active business which generates gross operating *revenues* as opposed to gross insurance *premiums*, unless the enterprise is reasonably related or incidental to the activities traditionally associated with the insurance industry. (See *Title Ins. & Trust Co.* v. *Los Angeles* (1923) 61 Cal. App. 232 [214 P. 667].)

The operation of a hotel is not in the nature of mere passive investment traditional in and incidental to the conduct of the insurance enterprise. It is an active, unrelated business which utilizes disposable assets and equipment, not, in our view, intended by the electorate to be free from taxation under the "in lieu" exemption of section 14-4/5, particularly where, as here, the profits appellant realized from its operation of the hotel were not taxable as gross premiums.

Accordingly, we conclude that appellant is not entitled to claim the "in lieu" exemption granted by former section 14-4/5 to "insurers and their property."[8]

The judgment is affirmed.

Racanelli, P. J., and Grodin, J.,* concurred.

A petition for a rehearing was denied April 15, 1982, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied June 9, 1982.

---

[8]This conclusion makes it unnecessary for us to consider respondent's claim that appellant was not the "owner" of the subject property for purposes of section 14-4/5.
*Assigned by the Chairperson of the Judicial Council.